

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
May 31, 2022
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DOUBLE JUMP, INC.,<br><br>                Debtor(s). | Lead Case No.: BK-19-50102-gs<br>Chapter 7<br><br>Substantively Consolidated With:<br><br>&#124; 19-50130-gs &#124; DC Solar Solutions, Inc. &#124;<br>&#124; 19-50131-gs &#124; DC Solar Distribution, Inc. &#124;<br>&#124; 19-50135-gs &#124; DC Solar Freedom, Inc. &#124; |
| Affects:<br> X  DC Solar Solutions, Inc.<br> X  DC Solar Distribution, Inc.<br> X  DC Solar Freedom, Inc.<br> X  Double Jump, Inc. | |
| CHRISTINA W. LOVATO,<br><br>              Plaintiff(s),<br><br>   v.<br><br>NIXON PEABODY LLP,<br><br>             Defendant(s). | Adv. Proc. No. 21-05072-gs<br><br>**Hearing Date**<br>**Date:**   February 18, 2022<br>**Time:**   9:30 a.m. |

1

## MEMORANDUM DECISION ON MOTION TO TRANSFER VENUE

The parties in this adversary proceeding disagree about the appropriate venue to hear this case. The defendant, Nixon Peabody LLC (Nixon), seeks an order transferring this proceeding to the United States District Court for the Eastern District of California (District Court), where similar litigation is pending before the Hon. Troy Nunley. Plaintiff, and chapter 7 trustee Christina Lovato (Trustee), opposes transfer. For the reasons stated, this court will enter an order denying the motion to transfer.

### Facts

Pre-petition, Nixon provided legal advice on tax issues to debtors DC Solar Solutions and DC Solar Distribution (together, DC Solar), as well as to non-debtor Solarmore Management Services, Inc. (Solarmore). The DC Solar entities filed for bankruptcy after their California headquarters were raided by federal law enforcement and were accused of operating a Ponzi scheme controlled by their founder, Jeff Carpoff. Nixon filed a proof of claim in the DC Solar Solutions case, seeking $111,223.95 for legal services.

The demise of DC Solar gave rise to numerous lawsuits involving individuals and entities affiliated with Carpoff and his companies. These include seven criminal actions against individuals and two civil actions which are pending before, or have been decided by, the District Court. Solarmore filed the first of the two civil actions in the District Court against various entities involved with DC Solar and Carpoff's related business transactions (*Solarmore I*). In December 2019, the Trustee stipulated to relief from the automatic stay to permit Solarmore to sue the debtors and the Trustee (Case No. 19-50102-gs, ECF No. 1483). Ultimately neither the Trustee nor the debtors were named as defendants in *Solarmore I*.

The second of the civil actions was filed by Solarmore in 2020, this time in Los Angeles Superior Court, against Nixon and Nixon partner Forrest Milder (*Solarmore II*). Nixon removed that action to the District Court where it was consolidated with the related matters pending there. In *Solarmore II*, Solarmore brought causes of action for breach of fiduciary duty, breach of contract, unjust enrichment, negligent misrepresentation, legal malpractice, and aiding and

abetting against Nixon. Solarmore alleges that Nixon was "directly involved in the DC Solar scheme by providing Tax Opinions to [Solarmore]…to encourage them to execute the agreements that enabled" the scheme.[1]

In the course of her administration of the consolidated debtors' estate, on October 25, 2021, the Trustee commenced the above-captioned adversary proceeding against Nixon. The Trustee's detailed complaint alleges causes of action for: professional malpractice; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; co-conspirator to breach of fiduciary duty; constructive fraudulent transfer and avoidance of fraudulent transfers, seeking to recover legal fees paid to Nixon; and disallowance of Nixon's proof of claim filed in the bankruptcy case. As in *Solarmore II*, the Trustee's allegations are rooted in the pre-petition tax advice Nixon provided to DC Solar.

Nixon has responded to the Trustee's complaint with a motion to transfer this proceeding to the District Court, accompanied by a demand for a jury trial and a motion in the main bankruptcy case to withdraw its proof of claim. The Trustee opposes all requests made by Nixon. Most recently, Nixon has filed a motion to dismiss this proceeding, asserting an *in pari delicto* defense it states it intends to assert in a motion to dismiss to be filed in *Solarmore II*.

On April 19, 2022, the Trustee filed an updated case docket for *Solarmore II*, reflecting the transfer of that case to the Hon. Troy Nunley. The court's review of the updated case docket reflects that Nixon's motion to dismiss *Solarmore II* was recently filed on May 20, 2022. The court's review of the District Court's dockets revealed that *Solarmore I* has also been transferred to Judge Nunley.

## Analysis

Transfers of adversary proceedings are governed by 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P.

---

[1] ECF No. 14-3, p. 2:15-17.

7087 further provides that, "[o]n motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412." The burden is on the movant to show by a preponderance of the evidence that transfer is appropriate.[2] "The Court has broad discretion in deciding motions to transfer."[3] Determinations regarding venue transfer are fact-specific, and are "'based on an individualized case-by-case analysis of convenience and fairness.'"[4]

### A. Interests of Justice

Courts in the Ninth Circuit examining the "interests of justice" prong under § 1412 consider the following factors:

> the economics of estate administration, the presumption in favor of the 'home court,' judicial efficiency, the ability to receive a fair trial, the state's interest in having local controversies decided within its borders by those familiar with its laws, the enforceability of the judgment, and plaintiff's original choice of forum.[5]

For purposes of the § 1412 analysis, the "home court" is the bankruptcy court where the debtor's bankruptcy case is pending.[6] "'[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate.'"[7]

The parties agree that the ability to receive a fair trial and the enforceability of the judgment are not at issue in this proceeding. The home court and plaintiff's choice of forum presumptions weigh in favor of keeping this proceeding in Nevada.

---

[2] *Marshack v. Sunwize Technologies, Inc. (In re DRI Companies)*, 552 B.R. 195, 197 (Bankr. C.D. Cal. 2016) (citing *Lebbos v. Schuette (In re Lebbos)*, 2007 WL 7540977, at *3 (B.A.P. 9th Cir. Nov. 14, 2007)).
[3] *Id.*
[4] *In re Mun. Corr., LLC*, 2012 WL 6737509, at *4 (Bankr. D. Nev. Dec. 28, 2012) (quoting *In re B.L. of Miami, Inc.*, 294 B.R. 325, 328 (Bankr. D. Nev. 2003)).
[5] *DRI Companies*, 552 B.R. at 197 (quoting *Senorx, Inc. v. Coudert Bros., LLP*, 2007 WL 2470125, at *1 (N.D. Cal. Aug. 27, 2007)).
[6] *Id.* (citing *Irwin v. Beloit Corp. (In re Harnischfeger Indus.)*, 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000)).
[7] *Id.* (quoting *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1247 (5th Cir. 1979)).

This dispute involves California law, because the events which are the subject of this dispute occurred in California. Accordingly, California courts have an interest in deciding the issues raised in this proceeding.

Judicial efficiency weighs against transfer of this proceeding to the District Court. *Solarmore I* and *II* are now pending before a new District Court judge with no prior experience in these matters and presumably little to no familiarity with the underlying facts. The undersigned, however, has been adjudicating matters involving the underlying facts since being assigned to the DC Solar bankruptcy cases in 2019. The Trustee's counsel commented during oral argument that if two judges from two different districts were to rule differently on the same issue – *in pari delicto* – the result would be "disastrous."[8] Nixon's motion to dismiss *Solarmore II* has only recently been filed and it appears it has not yet been set for hearing. In contrast, Nixon's *in pari delicto* argument is scheduled to be heard before the undersigned on June 3, 2022. As for the merits of the underlying dispute, if this court finds in favor of Nixon on its *in pari delicto* defense, further litigation may be entirely unnecessary. Accordingly, the evidence before the court demonstrates no more than a *potential* duplication of effort between this court and the District Court, with no *actual* beneficial impact on judicial efficiency to be gained by transfer at the current time.

Nixon's real concern is really that it could be subjected to inconsistent decisions in the lawsuits filed against it related to DC Solar and Carpoff. Understandably, they argue that this is a strong reason to transfer venue as Nixon is already subject to similar claims in *Solarmore I*. During oral argument, the court asked whether the trustee's claims against Nixon would be consolidated with *Solarmore I*. There is no plan to do so. Thus, while the risk of legal inconsistencies related to the claims against Nixon would be reduced by transfer of this case to the Eastern District of California, the potential for inconsistent verdicts at trial remains. Equally as important, Nixon is involved in a separate state court action brought by other plaintiffs

---

[8] ECF No. 76, p. 58:19-24.

seeking to hold it liable for their investments in DC Solar as well. That action cannot be consolidated and will proceed apart from *Solarmore I*. This creates another chance for inconsistent decisions and verdicts against Nixon.

While the transfer of this case may mitigate the possibility of inconsistent decisions and verdicts against Nixon, it similarly creates the possibility of inconsistent decisions for the trustee. The trustee has advised the court that the estate intends to bring additional tort actions against professionals raising issues similar to those involved in this case. The trustee has sued Montage Services, Inc., and others in *Lovato v. Wentz et al.,* Adv. Case No. 22-05008 (Bankr. D. Nev). The *Wentz* defendants have also moved to dismiss the trustee's tort claims based on *in pari delicto* under California law. Adv. Case No. 22-05008, ECF No. 9. That motion was set to be heard on July 12, 2022, and has been continued to August 4, 2022. In short, the potential for inconsistent rulings exists, and shall continue to exist, regardless of where this case is tried.

Complicating the court's analysis, as discussed at oral argument, if the court retains this matter, it may lack authority to enter final orders on the non-core causes of action raised here. However, there are well established procedures in place to enable this case to proceed in either the bankruptcy court or the Nevada District Court. Regardless of whether the bankruptcy court ultimately presides over a trial in this case, it may conduct discovery and pretrial matters to maintain consistency with the other adversary actions and efficiently prepare this case for trial.

Finally, the most important factor, the "economic and efficient administration of the estate," now weighs against transfer. The Trustee pointed out at oral argument the significant delay in *Solarmore II*, such that the case is in its infancy despite having been commenced in 2020. Nixon countered by explaining the cause of that delay (difficulty retaining counsel), its resolution and the lack of any further anticipated source of delay. However, the evidence before the court shows that notwithstanding the case having been filed a year and a half ago, the parties agreed to extend the deadline for Nixon to file its motion to dismiss until May 20, 2022, with responses due July 1, 2022, and replies due July 22, 2022. Further, although the backlog of criminal cases in the District Court did not, according to Nixon's counsel, prevent Judge Mendez

from acting promptly on the matters brought before him in *Solarmore I* and *II*, the court has not been presented with any evidence regarding Judge Nunley's case load.

In contrast, as stated above, the *in pari delicto* defense raised by Nixon is presently before this court on the motion to dismiss scheduled for hearing on June 3, 2022. That motion is fully briefed. Nixon has not proven by a preponderance of the evidence that the economic and efficient administration of the estate will benefit from transfer of this proceeding to District Court.

### B. Convenience of the Parties

"Even where a transfer is in the interests of justice, the Court also considers the factors relating to the convenience of the parties…."[9] The factors courts in the Ninth Circuit consider when assessing the convenience of the parties for purposes of § 1412 are as follows:

> 1) location of the plaintiff and the defendant; 2) ease of access to necessary proof; 3) convenience of witnesses; 3) availability of subpoena power for the unwilling witnesses; and 4) expenses related to obtaining witnesses.[10]

The plaintiff is located in Nevada. The defendant is a law firm headquartered in New York. Although Nixon states it maintains an office in California, its nearest office is in San Francisco. Judge Nunley is located in Sacramento. To the extent that in person appearances may be required, travel will be necessary for someone regardless of what court hears the case. Nixon's burden of traveling to Reno from San Francisco for this court's hearings is only nominally greater than the burden of traveling to Sacramento to attend District Court hearings. Moreover, much of the courts' proceedings continue to be conducted remotely in light of the ongoing COVID-19 pandemic, lessening the significance of this factor. Thus, the court finds that this factor does not weigh in favor of transfer.

As for ease of access to necessary proof, Nixon has lumped this factor in with those addressing the availability of witnesses, and has not addressed the availability of documentary

---

[9] *Jackson v. Fenway Partners, LLC*, 2013 WL 1411223, at *4 (N.D. Cal. Apr. 8, 2013).
[10] *Id.* (quoting *Senorx, LLP*, 2007 WL 2470125, at *1).

evidence in support of its defense.  However, the court notes that "the physical location of evidence no longer carries much weight in the transfer analysis given that technology has made it easier for documents to be transferred to different locations."[11]  The court interprets Nixon's failure to fully address this factor as a concession that the availability of documentary evidence pertinent to this proceeding does not weigh in favor of transfer.

Nixon makes much of the location of its percipient witnesses in California.  The court notes, however, that Nixon has not actually *identified* a single witness, their location or the testimony they will provide.  "[M]ere general allegations about key witnesses are not sufficient" to satisfy Nixon's burden of proof for transfer.[12]  As for the expenses of obtaining whichever witnesses the parties intend to call, the Trustee has correctly pointed out that this court has established procedures for the taking of testimony via remote means, such as telephone or video conference,[13] which method of taking testimony significantly reduces the cost of obtaining witnesses.

Finally, as to the subpoena power, "'witnesses are presumed to be willing to testify in either forum despite the inconvenience that one of the forums would entail.'"[14]  Moreover, subpoenas issued under Fed. R. Civ. P. 45(c)(1)(A)[15] "may command a person to attend a trial, hearing or deposition…within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Nixon has emphasized this argument.  Because Nixon has not identified any of its witnesses with any specificity, the court has no knowledge of whether those witnesses reside within 100 miles of the courthouse in Reno and are therefore subject to this

---

[11] *Doe v. Weinstein Co. LLC*, 2018 WL 5880191, at *4 (C.D. Cal. June 14, 2018) (citing *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009)).
[12] *Holmes v. Grubman (In re Holmes)*, 306 B.R. 11, 19 (Bankr. M.D. Ga. 2004); *see also Alexander v. The Steel Law Firm, P.C. (In re Terry Mfg. Co. Inc.)*, 323 B.R. 507, 511 (Bankr. M.D. Ala. 2007).
[13] ECF No. 1831.
[14] *Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Delaware, Inc.)*, 2015 WL 5468786, at *5 (Bankr. D. Del. Sept. 16, 2015) (quoting *HLI Creditor Trust v. Keller Rigging Constr., Inc. (In re Hayes Lemmerz Int'l Inc.)*, 312 B.R. 44, 47 (Bankr.D.Del.2004)).
[15] Incorporated into this proceeding by Fed. R. Bankr. P. 9016.

court's subpoena power. The failure to identify any imprisoned or non-party witnesses renders Nixon's arguments regarding the court's inability to subpoena such witnesses unpersuasive.

## Conclusion

Whether to transfer this case to the Eastern District of California is an exceedingly close question. There are considerable arguments for, and against, transfer of the case. Nixon, however, bears the burden of proving that the transfer is warranted. While the transfer would reduce the risk of inconsistent rulings for Nixon, it would not eliminate them, and would increase that same risk for the trustee. Even if the court were to transfer Nixon's case, the issue of *in pari delicto* under California law remains before this court. This weighs heavily on retention of this case. The other factors presented, and discussed above, do not convince the court that Nixon has demonstrated by a preponderance of the evidence that transfer of this proceeding from its current venue to the Eastern District of California is in the interests of justice or furthers the convenience of the parties. Accordingly, the court shall exercise its discretion and deny the Motion to Transfer Venue. The court will issue an order consistent with this ruling.

IT IS SO ORDERED.

\* \* \* \* \*

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #