_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
September 22, 2022

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DOUBLE JUMP, INC.,<br><br>          Debtor(s). | Lead Case No.: 19-50102-gs<br>Chapter 7<br><br>Substantively Consolidated With: |

| Affects: | 19-50130-gs | DC Solar Solutions, Inc. |
|---|---|---|
|  X  DC Solar Solutions, Inc. | 19-50131-gs | DC Solar Distribution, Inc. |
|  X  DC Solar Distribution, Inc. | 19-50135-gs | DC Solar Freedom, Inc. |
|  X  DC Solar Freedom, Inc. | | |
|  X  Double Jump, Inc. | | |

| | |
|---|---|
| CHRISTINA W. LOVATO,<br><br>          Plaintiff(s),<br><br>   v.<br><br>NIXON PEABODY LLP,<br><br>          Defendant(s). | Adv. Proc. No.: 21-05072-gs<br><br>Hearing Date<br>Date:    June 3, 2022<br>Time:   9:30 a.m. |

## MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Christina Lovato, chapter 7 trustee for the substantively consolidated bankruptcy estates (Trustee), sues Nixon Peabody LLP (Nixon) for professional malpractice, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, to recover fraudulent transfers, and to deny its proof of claim. Nixon seeks partial dismissal of these claims on the theories of *in pari delicto* and mootness. Motion to Dismiss Counts I-IV and VIII of the Complaint (Adv. ECF No. 43) (Motion to Dismiss). It contends that the debtors were just as, if not more, culpable for

1

the wrongdoing at the heart of the complaint, and thus are barred from recovering against Nixon. The Trustee has opposed the Motion to Dismiss (Adv. ECF No. 84) (Opposition), arguing that *in pari delicto* is inapplicable to her claims. She further contends that even if it did apply, dismissing her claims at the pleading stage is premature. For the reasons stated below, this court will enter an order denying the Motion to Dismiss in part as to counts I-IV. In light of Nixon's withdrawal of its proof of claim, the court will grant the Motion to Dismiss as to count VIII of the Complaint because the relief requested by the Trustee is moot.

## Facts

DC Solar Solutions, Inc. (Solutions) would manufacture the MSGs then sell the MSGs to buyers, usually investment funds. Enticed by federal investment tax credits generated from the purchase, use, and ultimate depreciation of the MSGs, buyers would make a down payment of $45,000.00 on a $150,000.00 purchase price. The remainder of the purchase price was wrapped into a twenty-year note obligation payable to Solutions. These note payments were to be funded by leasing the MSGs to third parties. The buyers leased the MSGs to DC Solar Distribution, Inc. (Distribution), who, in turn, would sublease their MSGs to third parties. The sublease payments were to be used to pay the buyers' note obligations to Solutions. DC Solar Freedom, Inc. (Freedom) was established in 2014 to market the MSGs and generate additional revenue by placing them in public spaces in a socially conscious way.

The Trustee alleges that the debtors' founder and executive Jeff Carpoff used the debtors to perpetrate a Ponzi scheme. The Trustee alleges that Solutions sold, and Distribution leased, far more MSGs than actually existed. This necessarily meant that Distribution was subleasing MSGs that did not exist and were not actually generating payments on those subleases. Instead, the trustee alleges that Carpoff sent new purchase monies paid to Solutions by new buyers/funds to Distribution to cover the accruing sublease payments owed to existing prior buyers/funds. These funds were then recycled back to Solutions. The complaint also alleges that Carpoff used the debtors to fund a lavish lifestyle for himself, furthering the illusion that the debtors were

profitable.  Based on this scheme, the Trustee alleges that the debtors were insolvent at all material times.

Between 2010 and 2018, Nixon provided legal advice on tax issues to Solutions and Distribution, as well as to non-debtors Solarmore Investment Services, Inc., Solarmore Management Services, Inc. and Halo Management Services, LLC.  Each of these non-debtors were managing members of certain investment funds that purchased the MSGs (Funds).[1]  Under the debtors' business model, the primary benefit to the buyers/funds was the tax credits they received for owning the MSGs.  Among other things, Nixon assisted Solutions and Distribution with the tax advantaged transactions, including preparation of tax opinion letters provided at the close of purchase, which served as Nixon's endorsement of those transactions.  Included in the tax opinion letters were representations about the business structure, such as the use of lease revenue by the buyers/funds to pay Solutions and the leasing of MSGs to end users.

As the years progressed, Carpoff's alleged Ponzi scheme began to unravel.  The Trustee alleges:

> After a particular DC Solar senior executive discovered that certain other DC Solar insiders were committing wrongdoing, he left DC Solar's employ. This person discussed with another former DC Solar employee about how to stop the wrongdoing, and both took active steps to do so. At least one of them became a "whistleblower" with federal law enforcement, resulting in the Raid.

Complaint, Adv. ECF No. 1, pp. 7:27-8:3.  Federal law enforcement raided the debtors' California headquarters on December 18, 2018.

The Trustee contends that after the raid, the debtors were accused of operating a Ponzi scheme, and subsequently made certain changes to their corporate structure.  Most significantly, they appointed Daniel Briggs, then-president of Freedom, as president of Solutions and Distribution, and retained GlassRatner Advisory & Capital Group, LLC to act as chief

---

[1] According to the Complaint (defined below), "The buyers were typically tax-equity funds, 99% owned by a financial investor seeking federal investment tax credits… After five years, ownership of the buyer would be (largely) transferred from the investor to the managing member, an entity affiliated with or controlled by Carpoff."  Complaint, Adv. ECF No. 1, p. 5:8-15.

3

restructuring officer.  Ultimately, the debtors filed for bankruptcy between January 31, 2019 and February 5, 2019.

Post-petition, the Trustee sought and obtained an order substantively consolidating the debtors' bankruptcy cases under the Double Jump, Inc. bankruptcy.  As for Carpoff, he has entered into a plea agreement in the federal criminal action against him brought in the Eastern District of California and is serving a prison sentence for his role in the alleged Ponzi scheme.

On March 4, 2019, Nixon filed proof of claim no. 34-1 in Solutions' bankruptcy case, seeking $111,223.95 for pre-petition legal services.  On October 25, 2021, the Trustee commenced this proceeding against Nixon.  The Trustee's allegations are rooted in the pre-petition tax advice Nixon provided to Solutions and Distribution from 2010 to 2018.  The Trustee's detailed complaint (Complaint) alleges causes of action for: (I) professional malpractice; (II) breach of fiduciary duty; (III) aiding and abetting breach of fiduciary duty; (IV) co-conspirator to breach of fiduciary duty; (V) constructive fraudulent transfer and (VI and VII) avoidance of fraudulent transfers, seeking to recover legal fees paid to Nixon; and (VIII) disallowance of Nixon's proof of claim.

Nixon responded to the Trustee's Complaint with, among other motions and requests, the Motion to Dismiss.  According to Nixon, the Trustee stands in the shoes of Solutions and Distribution and cannot recover from Nixon for its alleged role in Carpoff's alleged Ponzi scheme.  Nixon also contends that count VIII objecting to its proof of claim should be dismissed as moot because it intended to withdraw that claim.[2]

In her Opposition, the Trustee contends that the *in pari delicto* defense is inapplicable to the Complaint as a matter of law because Nixon benefitted from Carpoff's wrongdoing.  Further, she contends that Carpoff's actions cannot be imputed to Solutions and Distribution, and even if they could, the replacement of the debtors' management pre-petition insulated the Trustee from

---

[2] After the Motion to Dismiss was filed, this court entered its order granting Nixon's request to withdraw its proof of claim.  *See* Case No. 19-50102-gs, ECF No. 3295.

application of the doctrine because as of the commencement of the case, the wrongdoers were removed from management of Solutions and Distribution.  The Trustee also highlights references in the Complaint to executives and others employed by the debtors who were not involved in the alleged Ponzi scheme and contends those individuals had the power to stop the scheme had they known about it, including the following:

- "Daniel Briggs was Freedom's Vice President of Product Development in 2017 and became Freedom's President prior to the Raid (defined below). Before the Raid: Julie Muraco and Eric Sirotkin were Freedom shareholders and members of its Board of Directors (Mr. Sirotkin was also an officer).  Before the Raid: (1) Michael Horan was Solutions' Chief Technology Officer; (2) Sebastian Jano was Solutions' Director of Project Finance; and (3) Joshua Daggs was a Solutions accountant with access to DC Solar's financial information." Complaint, Adv. ECF No. 1 at p. 7, ¶ 34.

- "Beginning in 2011, Nixon worked directly with John Messer as Solutions' insider and representative.  Nixon knew that John Messer was: (1) a 21% owner of Solutions; (2) a Solutions officer (Vice President); (3) on Solutions' Board of Directors; (4) an attorney; and (5) involved in substantive Solutions-related matters." *Id.* at p. 28, ¶ 172.

- "On June 25, 2014, Nixon received the litigation report, which reflected that John Messer had brought two lawsuits against Carpoff… The docket for the Feb. 2013 Messer Litigation reflected that John Messer had moved for the appointment of a receiver for Solutions, supported by his publicly filed declaration dated May 13, 2013 ('Messer Declaration') …. John Messer swore in the Messer Declaration, among other things, that …. 'The appointment of a Receiver is necessary to prevent the further misappropriation of funds and other abuses of the majority shareholder to the detriment of my interests as a minority shareholder." *Id.* at pp. 28-29, ¶¶ 173-179.

Finally, the Trustee argues that if the *in pari delicto* doctrine does apply, the court has the discretion under California law to not dismiss the Complaint on equitable grounds.

On June 3, 2022, the court held hearings on the Motion to Dismiss and Nixon's accompanying request for judicial notice (RJN).  At the close of argument, the court took the Motion to Dismiss and the RJN under advisement.

## Analysis

Nixon seeks dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6).[3]  The U.S.
Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.
544, 570 (2007)). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable
legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"
*Johnson v. Riverside Health Care System, LP*, 534 F.3d 1116, 1121-1122 (9th Cir. 2008)
(quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990)).  Dismissal under
Rule 12(b)(6) should not be granted "'unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claim which would entitle him to relief.'" *Balistreri*, 901 F.2d at
699 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

Courts considering dismissal under Rule 12(b)(6) must accept as true all facts alleged in
the complaint.  *See id.*  Accordingly, "[a] claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
However, "the tenet that a court must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions."  *Id.*  Moreover, courts "are not…required to
accept as true allegations that contradict exhibits attached to the Complaint or matters properly
subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of
fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.
2010).

### A.  Counts I-IV: The *In Pari Delicto* Defense

The doctrine of *in pari delicto* provides that "when a participant in illegal, fraudulent, or
inequitable conduct seeks to recover from another participant in that conduct, the parties are

---

[3] Incorporated herein by Fed. R. Bankr. P. 7012(b).

deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them." *Goldman v. Dardashti (In re Tootian)*, 634 B.R. 361, 373 (Bankr. C.D. Cal. 2021). Put more simply, "[t]he doctrine of *in pari delicto* is an affirmative defense that generally 'prohibits plaintiffs from recovering damages resulting from their own wrongdoing.'" *ShengdaTech Liquidating Trust v. Hansen, Barnett & Maxwell, P.C., et al. (In re ShengdaTech, Inc.)*, 519 B.R. 292, 301 (D. Nev. 2014) (quoting *USACM Liquidating Trust v. Deloitte & Touche, LLP*, 764 F.Supp.2d 1210, 1229 (D. Nev. 2011)).

The trustee's claims are governed by California law, which recognizes the affirmative defense of *in pari delicto*. As noted in *Sugarman v. Taylor (In re Yellow Cab Coop., Inc.)*, 602 B.R. 357, 360 (Bankr. N.D. Cal. 2019), "Section 3517 of the California Civil Code generally codifies the doctrine of *in pari delicto* or unclean hands: 'No one can take advantage of his own wrong.'" California courts applying *in pari delicto* examine: (1) whether the misconduct at issue can be "imputed to the corporate" debtor; (2) whether the debtor's "misconduct can be imputed to the bankruptcy trustee"; and (3) "whether the misconduct is sufficiently related to the causes of action asserted" by the trustee in the bankruptcy. *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP*, 133 Cal. App. 4th 658, 679 (2005) [citations omitted]. Analysis of the *in pari delicto* defense involves a fact intensive inquiry. *See Gottlieb v. Fulcrum 5 Inc. (In re KSL Media Inc.)*, 2016 WL 3549166, at *2 (Bankr. C.D. Cal. June 21, 2016); *see also Kelley v. BMO Harris Bank, N.A. (In re Petters Co., Inc.)*, 603 B.R. 424, 435 (Bankr. D. Minn. 2019).

Where a debtor is alleged to have operated a Ponzi scheme, it is common for the estate to bring claims against professionals that provided services to that debtor; so is the defense of *in pari delicto*. Often the nature of the motion is determinative. This is why application of the *in pari delicto* doctrine prior to trial is atypical. *See Petters*, 603 B.R. at 435. "An affirmative defense is grounds for dismissal at the pleading stage only if 'the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense ....'" *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (quoting *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018)). In particular, numerous courts have denied motions to dismiss based on *in*

*pari delicto* as premature where the allegations in support of the defense do not appear on the face of the complaint. *See, e.g., Smith ex rel. Ests. of Bos. Chicken, Inc. v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180 (D. Ariz. 2001) (factual dispute over the existence of innocent insiders); *Rund v. Lee (In re Amergence Technology, Inc.)*, 2016 WL 4069550, at *3 (Bankr. C.D. Cal. July 27, 2016) (factual dispute regarding applicability of the adverse interest exception asserted by the chapter 7 trustee plaintiff); *Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709, 749 (Bankr. D.N.J. 2009) (court found that the application of the imputation doctrine did not appear on the face of the complaint, reserving the issues for further discovery); *Miller v. Parker, et al. (In re Reading Broadcasting, Inc.)*, 390 B.R. 532, 560 (Bankr. E.D. Pa. 2008) (application of the adverse interest exception required further factual development); *Smith v. George (In re RCK Modular Homes Systems, Inc.)*, 363 B.R. 29 (Bankr. D. N.H. 2007) (defendants' allegations regarding a conspiracy were not supported on the face of the complaint for malpractice); *Kalisch v. Maple Trade Fin. Corp. (In re Kalisch)*, 2007 WL 1580049, at *4 (Bankr. S.D.N.Y. May 30, 2007) (court had insufficient facts to enable it to weigh the relative fault of the parties); *Alberts v. Tuft, et al. (In re Greater Se. Cmty. Hosp. Corp.)*, 333 B.R. 506, 539 (Bankr. D.D.C. 2005) (law firm defendants' allegations of fault were unsupported on the face of the complaint).

With this in mind, the court now applies the factors set forth in *Peregrine* to the allegations of the Complaint.

### 1. First *Peregrine* Factor: Imputation to Solutions and Distribution

Generally, "where the plaintiff is a corporation, the doctrine of *in pari delicto* applies if, under agency principles, the unlawful actions of an agent of the corporation are imputed to the corporation." *Mosier v. Stonefield Josephson, Inc.*, 2011 WL 5075551, at *4 (C.D. Cal. Oct. 25, 2011) (citing *In re Crown Vantage, Inc.*, 2003 WL 25257821, at *6 (N.D. Cal. Sept. 25, 2003), *aff'd sub nom. Crown Paper Liquidating Tr. v. Pricewaterhousecoopers LLP*, 198 F. App'x 597 (9th Cir. 2006)). As noted in *Peregrine*, "[i]t is settled California law that knowledge of an officer of a corporation within the scope of his duties is imputed to the corporation." *Peregrine*,

133 Cal.App.4th at 679 [internal quotation and citation omitted].  In that case, one of the primary perpetrators of the Ponzi scheme at issue was also a co-owner and the sole controller of the corporation used in the scheme.  These facts lead the court in *Peregrine* to conclude that the conduct of the owner/controller was properly imputed to the corporation.

But not all fact patterns in the *in pari delicto* canon are straightforward.  Under the adverse interest exception, "where corporate agents act in a manner adverse to the interests of the corporation, the actions of the agents are not imputed to the corporation." *Uecker v. Wells Fargo Capital Finance, LLC (In re Mortg. Fund '08 LLC)*, 527 B.R. 351, 368 (N.D. Cal. 2015).  "In other words, if an officer's or director's alleged fraud was 'on behalf' of the company, it would be imputed to the company and *in pari delicto* would apply; whereas, if the fraud was 'against' the company, the alleged fraud would not be imputed to the company." *In re Infinity Bus. Grp., Inc.*, 612 B.R. 76, 137 (Bankr. D.S.C. 2019), *aff'd*, 628 B.R. 213 (D.S.C. 2021), *aff'd*, 31 F.4th 294 (4th Cir. 2022).  Moreover, the United States Bankruptcy Court for the Central District of California has previously held that, "[w]hile New York courts have required that the agent has 'totally abandoned' the principal's interests and other courts have required 'total' or 'complete' adversity for the 'adverse interest' exception to apply…California courts and the Ninth Circuit do not appear to require this heightened standard of self-dealing." *In re California TD Investments, LLC*, 489 B.R. 124, 130 (Bankr. C.D. Cal. 2013) [internal citations omitted].  Rather, "California courts have generally framed the rule merely as whether interests were 'adverse,' without stating a requirement of 'complete' abandonment of the corporation's interests." *MicroTechnologies, LLC v. Autonomy, Inc.*, 2018 WL 4538782, at *5 (N.D. Cal. Sept. 21, 2018); *see also Export-Import Bank of Korea v. ASI Corp., et al.*, 2018 WL 2725300, at *6 (C.D. Cal. Apr. 26, 2018).

Although the Trustee does not directly address the issue in her Complaint, there is no serious dispute that Carpoff served as an agent for the debtors and his acts generally can be imputed to them.  Most specifically, the Trustee has alleged that Carpoff was "a DC Solar-insider with material but not exclusive control over DC Solar," who "was also perpetrating a

Ponzi scheme … through and upon DC Solar." Adv. ECF No. 1 at p. 6, ¶ 27.  This allegation, and similar ones throughout the Complaint, establish that Carpoff was an agent for the debtors. To defeat *in pari delicto* at this stage, the Trustee must only allege that Carpoff acted adversely to Solutions and Distribution.  She has alleged as much in the Complaint, contending that the debtors did conduct legitimate business, but as a result of Carpoff's alleged Ponzi scheme they were insolvent at all material times.

      The court's inquiry under the first *Peregrine* factor does not end there, however.  Nixon contends that because Carpoff was the "sole actor" for the debtors the adverse interest exception in this case is subject to a further exception.  The United States District Court for the Northern District of California explained the sole actor exception as follows:

> California courts have recognized a limited exception to the rule that the acts of an officer acting adversely to a company will not be attributed to it. In *Peregrine*, the court imputed the fraudulent conduct of an officer and sole-shareholder to the corporation in spite of the fact that his actions were adverse to it. 133 Cal. App. 4th at 679, 35 Cal. Rptr. 3d 31. The court reasoned that because the perpetrator of the fraud "was also the owner and sole person in control of [the corporation], his fraud is properly imputed to [the corporation]." *Id.* Courts have declined to impute this exception, however, where it has not been established that all relevant decision makers for the corporation were engaged in the fraud. *See Casey v. U.S. Bank Nat'l Ass'n,* 127 Cal. App. 4th 1138, 1143, 26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005). Thus, finding that a corporation is barred from recovery on the basis of unclean hands is appropriate at the summary judgment stage only if the undisputed evidence meets the standard set forth in *Peregrine*, namely, that those who perpetrated the fraud solely control the corporation.

*McHale v. Silicon Valley Law Group*, 2011 WL 6990187, at *6 (N.D. Cal. Dec. 14, 2011).

      The sole actor exception requires a determination of the debtor's relevant decision makers. This is inherently a question of fact and one evading bright lines.  The court in *California TD Investors* observed that "the weight of authority applies the exception if the agent/officer was either the sole shareholder *or* the sole manager of the corporation." 489 B.R. at 131 [emphasis in original].  Put differently, absent sole ownership, "the 'sole actor' exception

should not apply if 'at least one decision-maker could have stopped the fraud'...." *Id.* at 132 (quoting *Industrial Enters. of Am., Inc. v. Mazzuto (In re Pitt Penn Holding Co.)*, 484 B.R. 25, 39–41 (Bankr. D. Del. 2012)).  As observed by other bankruptcy courts, "where there is no one to whom to impart [the sole representative's] knowledge and no one from whom [the sole representative] may conceal it," application of the sole actor exception will negate the adverse interest exception.  *DeGiacomo v. Tobin & Assoc., P.C. (In re Inofin Inc.)*, 2012 WL 5457415, at *17 n.18 (Bankr. D. Mass. Nov. 8, 2012) (quoting *Welt v. Efloor Trade, LLC (In re Phoenix Diversified Inv. Corp.)*, 439 B.R. 231, 242 (Bankr. S.D. Fla. 2010)).

In this instance, the court must accept the well-plead allegations of the Complaint as true. As in the United States Bankruptcy Court for the Northern District of California's decision in the *Yellow Cab* adversary proceedings, this is determinative of the sole actor exception's application. There, a chapter 11 trustee sued the debtor's former accountant for professional negligence, accounting malpractice and conspiracy arising out of an alleged Ponzi scheme.  In the initial decision on the issue, *Sugarman v. Taylor (In re Yellow Cab Cooperative, Inc.)*, 602 B.R. 357, 362 (Bankr. N.D. Cal. 2019) (hereafter *Yellow Cab I*), the court granted the defendant's motion to dismiss based on the *in pari delicto* defense, ruling that the sole actor exception foreclosed the trustee's argument that the adverse interest exception barred application of the doctrine.  In that decision, the court relied on the trustee's allegations in the complaint which stated that the entirety of the debtor's officers and directors controlled the debtor and were co-conspirators in the scheme with the defendant to loot the debtor.

Though the court granted the motion to dismiss, it allowed the trustee leave to amend. The trustee amended his complaint to allege that the defendant conspired with "certain of [the debtor's] officers and directors, or a subset of [the debtor's] officers and directors" to loot the debtor.  *Sugarman v. Taylor (In re Yellow Cab Cooperative, Inc.)*, 2019 WL 10528131, at *1 (Bankr. N.D. Cal. Dec. 18, 2019) (*Yellow Cab II*).  Again, the defendant moved to dismiss based on *in pari delicto* and the sole actor exception to the adverse interest rule.  In *Yellow Cab II*, however, the court ruled that the trustee's modification, referring to a *subset* of the officers and

11

directors instead of *all* of them, was "sufficient to defeat Rule 12(b) dismissal on the grounds that 'unclean hands' bars the Trustee's claims." *Id.*

Outcomes like that in *Yellow Cab II* stem in part from the absence of a concrete definition of the term "relevant decision maker" in the context of the *in pari delicto* doctrine. California courts have not defined the term in applying the sole actor exception. Instead, courts in the Ninth Circuit tend to note who is *not* a relevant decision maker. For example, "the 'existence of an innocent authority-lacking employee willing to blow the whistle does not sever the unity of the guilty insiders and the corporation.'" *USACM Liquidating Tr. v. Deloitte & Touche LLP*, 764 F. Supp. 2d 1210, 1221 (D. Nev. 2011), *aff'd sub nom. USACM Liquidating Tr. v. Deloitte & Touche*, 523 F. App'x 488 (9th Cir. 2013), *opinion withdrawn and superseded*, 2014 WL 612503 (9th Cir. Feb. 18, 2014), *opinion amended and superseded on denial of reh'g*, 754 F.3d 645 (9th Cir. 2014), and *aff'd sub nom. USACM Liquidating Tr. v. Deloitte & Touche*, 754 F.3d 645 (9th Cir. 2014) (quoting *Grede v. Bank Of N.Y.*, 2009 WL 1657578, at \*4 (N.D. Ill. 2009)).

Also, "California courts…refuse to impute the acts or knowledge of an officer in a situation where that officer has no power to bind the corporation." *California TD Invs. LLC*, 489 B.R. at 133; *see also USACM*, 764 F. Supp. 2d at 1222 (citing *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 710–14 (S.D.N.Y.2001)) ("Of particular importance was the fact that no one identified as an innocent insider had real, as opposed to nominal, authority within the company."). This example leads to yet another exception to the *in pari delicto* analysis, this time to the sole actor exception: known as the "innocent insider" or "innocent decision-maker" exception, this exception provides that "'if innocent decision makers exist within the company with authority to stop the fraud, the company and the agent are not the same entity, so the sole actor rule cannot apply.'" *USACM*, 764 F. Supp. 2d at 1221 (quoting *McHale v. Citibank, N.A. (In re 1031 Tax Group, LLC)*, 420 B.R. 178, 203 (Bankr. S.D.N.Y. 2009)).

In *USACM*, the Ninth Circuit Court of Appeals affirmed the district court's decision on summary judgment to not apply the innocent insider exception where the plaintiff "failed to present evidence of any 'innocent decision-makers' within [the debtor] sufficient to permit a

reasonable fact finder to find that [the debtor's owners and controllers] were not [the debtor's] sole actors for purposes of imputation." *USACM*, 754 F.3d at 648 (citing *In re Amerco Derivative Litig.*, 252 P.3d 681, 696 (Nev. 2011)). In its underlying decision, the United States District Court for the District of Nevada discussed the innocent insider exception in more detail, examining its application by other courts and concluding that "courts have required evidence that the innocent insider could and would have exercised corporate authority to stop the fraud." *USACM*, 764 F. Supp. 2d at 1221. Ultimately, the court concluded that to the extent Nevada would adopt the innocent insider exception to the sole actor exception, "Nevada would inquire whether any innocent insider existed who could, and would, have exercised actual corporate authority to stop the fraud such that there is no unity between the wrongdoing agents and their corporate principal." *Id.* at 1222. In applying the innocent insider exception, the district court in *USACM* examined each of the insiders the trustee had identified as "innocent" in the proceeding, explaining by reference to extensive discovery materials why each insider did not constitute an "innocent insider" for purposes of the sole actor exception analysis. *Id.* at 1223-28. Accordingly, the district court ruled that the innocent decision-maker exception did not apply, because the debtor "granted [its two owners and controllers] unfettered control over every aspect of USACM's business." *Id.* at 1228.

In contrast to the *USACM* decision on a summary judgment motion, the United States District Court for the District of Arizona addressed the innocent insider exception in the context of a motion to dismiss under Rule 12(b)(6). In *Smith ex rel. Ests. of Bos. Chicken, Inc. v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180 (D. Ariz. 2001), the chapter 11 plan trustee brought a complaint asserting causes of action for professional malpractice, aiding and abetting breach of fiduciary duty and preferential transfer, among others, against Arthur Andersen, LLP. Arthur Andersen had, prepetition, "performed professional accounting services with respect to certain Boston Chicken public offerings," *id.* at 1191, and later represented Boston Chicken in an SEC investigation. Arthur Andersen filed a motion to dismiss arguing that certain counts of the plan trustee's complaint "should be dismissed for lack of subject matter jurisdiction because the

Trustee lacks standing to bring this action under the doctrine of *in pari delicto*." *Id.* at 1198.

Citing *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld*, 212 B.R. 34, 44–45 (S.D.N.Y.

1997), the District of Arizona observed that in "cases involving more than one corporate actor,

the plaintiff may avoid dismissal for lack of standing by alleging the existence of 'an innocent

member...of management who would have been able to prevent the fraud had he known about

it.'" *Id*. at 1199.  Pertinent to this instance, the court in *Smith* examined the innocent insider

exception in its decision denying the motion to dismiss under *in pari delicto*:

> Trustee has adequately alleged that there were innocent members
> on Boston Chicken's Board and Audit Committee who were
> unaware of the wrongdoing. *Wechsler*, 212 B.R. 34, 44–45. While
> discovery may reveal that the alleged "innocent members" had
> some limited knowledge of the wrongdoing, the Trustee's
> allegations are sufficient to survive this Motion to Dismiss based
> on lack of standing. At this time, for this Court to determine which
> members possessed sufficient knowledge, when it was obtained,
> and what they did with such knowledge would require this Court to
> make improper factual determinations.

*Id.* at 1200; *see also* at 1201 ("[T]he Trustee in these proceedings alleged that there were

innocent members on the Boston Chicken's Board and Audit Committee who were unaware of

the misconduct and could have taken action against Arthur Andersen and others. To determine

whether or [sic] they actually would have taken action and what type of action was necessary, is

a question that can only be answered after some discovery has taken place, but not at this

preliminary stage.").

The parties have discussed the United States District Court for the Northern District of

California's decision on the innocent insider exception in *In re Crown Vantage, Inc.*  Applying

Virginia law, the Northern District of California ruled that, "irrespective of whether all or some

of the directors also participated, the courts have held that where a sole shareholder is a

participant in the wrongdoing, an allegation that independent or innocent directors could have

taken steps to stop the wrongful conduct is insufficient to avoid the bar of in pari delicto."

*Crown Vantage,* 2003 WL 25257821 at *9.  The *Crown Vantage* court cited two non-binding

14

United States Courts of Appeal cases for this conclusion, one from the Third Circuit (*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001)) and one from the Fifth Circuit (*FDIC v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992)). *Id.* The *Crown Vantage* decision expressly hinged on the application of Va. Code Ann. § 13.1-680: "Under the law of Virginia…such a result follows from the fact that a sole shareholder has the right to remove directors." *Id.* The district court further declined to consider the plaintiff's arguments regarding comparative fault based on California and New York law, stating that "[n]one of the claims as to which in pari delicto is applicable…is governed by the law of any state other than Virginia." *Id.*

Citing *Crown Vantage,* Nixon argues that Carpoff, together with his wife, are the sole shareholders of the debtors and this precludes any deviation from the sole actor exception and application of the *in pari delicto* doctrine.[4] The court is not comfortable with reaching this conclusion as a matter of law. It appears that only one case has cited *Crown Vantage* for the proposition that "*in pari delicto* prevents a trustee from bringing an action where the sole shareholder participated in the fraud." *In re Motorwerks, Inc.*, 371 B.R. 281, 291 n.6 (Bankr. S.D. Ohio 2007). Moreover, this appears to be contrary to numerous decisions applying California law and concluding that determination of the relevant decision makers for purposes of the sole actor exception is an inherently factual question. The court is not inclined to rely upon the *Crown Vantage* court's application of *Virginia* law as dispositive that the Carpoffs' ownership of Double Jump precludes the innocent insider exception in this proceeding under *California* law.

---

[4] Nixon contends that Jeff and Paulette Carpoff were the 100% owners of Double Jump, Inc., which in turn was the sole owner of Solutions and Distribution. The documents cited in support of these contentions similarly reference that the Carpoffs were not the sole shareholders of Freedom. The parties do not materially discuss the role, if any, that Freedom plays in this equation. It too has been substantively consolidated with Double Jump, Solutions, and Distribution. Even if the court were to accept that the shareholders' involvement in the fraud was dispositive of the sole actor exception, the question of Freedom's ownership and involvement precludes dismissal of the claims at this stage as a matter of law.

The court need look no further than the first *Peregrine* factor to determine that application of the *in pari delicto* defense at the pleading stage is premature in this case.  In this court's extensive review of the case law, one common thread runs through every standard, every exception, and every exception to an exception: the application of the *in pari delicto* doctrine requires an in-depth examination and a weighing of the facts of the case.  Only where the defense is apparent on the face of the complaint can the court, at the pleading stage, dismiss on the basis of *in pari delicto*.  *See Crown Vantage,* 2003 WL 25257821 at *7 (citing *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.2d 147, 163–166 (2nd Cir. 2003)); *Boquist* 32 F.4th at 774).

Nixon argues that the Carpoffs exercised complete control over the debtors such that their actions in perpetrating the alleged Ponzi scheme should be imputed to them as the sole actors.  Yet, the Trustee has clearly alleged that the Carpoffs were not the sole relevant decision makers for the debtors.  She has alleged that Carpoff had "material but not exclusive control over DC Solar." Adv. ECF No. 1 at p. 6, ¶ 27.  She further identified non-Carpoff insiders of the debtors who did not know about the wrongdoing. *Id*. at p. 7, ¶¶ 33-35.  The Trustee maintains that "at least one DC Solar decision maker could have stopped the wrongdoing had that person known about it." *Id*. at ¶¶ 33 and 35-37.

Further complicating this matter is the involvement of John Messer.  At paragraphs 172-180 of the Complaint, the Trustee alleges that Messer was known to be an officer, director, and shareholder of Solutions.  Messer commenced a state court action against Solutions and sought appointment of a receiver.  As alleged by the Trustee, Messer argued that Carpoff had acted adversely to the corporation by misappropriating corporate accounts for his own benefit. *Id*. at pp. 28-29, ¶ 177.  It is unclear why Messer's involvement with Solutions does not raise a question of fact as to application of sole actor for the period he served as an officer, director, and shareholder of Solutions.  That Messer sought a receivership for Carpoff's alleged misuse of corporate assets suggests that similar actions could have been taken if the alleged Ponzi scheme had been discovered.

The Trustee's Complaint sets forth several sets of facts stating that the Carpoffs were not exclusively in control of the debtors, individually or collectively. Rather, she alleges the existence of innocent decision makers that could have stopped Carpoff's wrongful activity if it had been discovered. Nixon attempts to blunt these allegations by directing the court toward prior statements of the Trustee and reference to other matters in the record. Specifically, it contends that the Carpoffs' ownership of Double Jump is dispositive on its defense of *in pari delicto*. The court disagrees. As discussed above, the court does not find ownership to be dispositive under California law. Additionally, there are questions about whether the Carpoffs were the sole owners of the debtors at all material times. Nixon does not account for Messer's prior ownership of Solutions, or the minority interests in Freedom not held by the Carpoffs. Absent development of those issues, dismissal is not appropriate. In this case, the facts subject to judicial notice do not sufficiently contradict the allegations in the Complaint such that dismissal under *in pari delicto* can be granted. [5] These factual uncertainties render premature application of *in pari delicto* at this stage of the proceeding.

## 2. Second *Peregrine* Factor: Imputation to the Trustee

If Carpoff's conduct can be imputed to the debtors, the Trustee argues that the debtors, and by extension the Trustee herself, are insulated from application of the *in pari delicto* doctrine

---

[5] It is far from clear that the documents referenced in Nixon's request for judicial notice compel dismissal. Footnote 15 to the court's findings of fact in its order granting substantive consolidation of the debtors' bankruptcy estates (Consolidation Order) states, "Certain other DC Solar-insiders, including those with a range of authority and access, including holding executive-level positions and otherwise, acted without knowledge of the Carpoff Scheme or any wrongdoing." Case No. 19-50102-gs, ECF No. 2613, p. 7 n.15. Footnote 37 to the court's conclusions of law in the Consolidation Order further states that "[a]t different times, there were certain Debtors [sic] insiders with varying level of control, responsibility and access who acted without knowledge of the Carpoffs' and other insiders' wrongdoing. Some of these individuals were owners, officers and/or directors of the Debtor." *Id.* at p. 14 n.37. Further, Carpoff's plea agreement states that Carpoff "directed others to undertake acts" in furtherance of the alleged Ponzi scheme. *See* Case No. 19-50102-gs, ECF No. 2326-1, p. 18. His plea agreement also discloses that "Jeff sometimes hid transactions related to the fraud from Paulette and sometimes instructed individuals not to discuss certain aspects of the fraud with her." *Id.* at p. 20:1-2. These allegations suggest that the determination of the *in pari delicto* exceptions will require inferences to be made which are inconsistent with Nixon's request for dismissal under Rule 12(b)(6).

because the wrongdoers were replaced prepetition, post-FBI raid with Mr. Briggs. The debtors

then appointed GlassRatner as chief restructuring officer. She contends that the appointment of

new management as of the petition date cleansed the debtors of the misdeeds committed by

Carpoff and certain officers and directors, and therefore the debtors cannot be *in pari delicto*

with Nixon.

Courts have adopted this argument where a *receiver* is appointed pre-petition. Rejecting

the *in pari delicto* defense, courts have held that it no longer applies "once its controlling

wrongdoer is ousted, a receiver is appointed, and the entity is no longer an 'evil zombie.'" *Smith*

*v. Bull Mountain Coal Prop., Inc.*, 2008 WL 17356047, at *12 (D. Mont. Mar. 7, 2008) (quoting

*Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir.1995)); *see also FDIC v. O'Melveny & Myers*, 61

F.3d 17, 19 (9th Cir. 1995); *McNamara v. Intercept Corp.*, 2020 WL 1531375, at *8 (D. Nev.

Mar. 31, 2020) (quoting *Scholes*, 56 F.3d at 754-55) ("'[T]he defense of *in pari delicto* loses its

sting when the person who is *in pari delicto* is eliminated.'"); *Glob. Money Mgmt., L.P. v.*

*McDonnold*, 2008 WL 11337623, at *9 (S.D. Cal. Feb. 27, 2008).

As to bankruptcy trustees, however, *in pari delicto* applies to a trustee to the same extent

as it would to the debtor. Thus, in *Rund v. Lee (In re Amergence Technology, Inc.)*, 2016 WL

4069550, at *2 (Bankr. C.D. Cal. July 27, 2016), the court observed: "'Although the Ninth

Circuit has not directly addressed the issue, every circuit to have considered the question has

held that a defendant sued by a trustee in bankruptcy may assert the defense of *in pari delicto*, if

the jurisdiction whose law creates the claim permits such a defense outside of bankruptcy.'"

(quoting *Uecker v. Wells Fargo Capital Finance, LLC (In re Mortgage Fund '08 LLC)*, 527 B.R.

351, 366–367 (N.D. Cal. 2015)) [internal quotation omitted]. *See also In re Agribiotech, Inc.*,

2005 WL 4122738, at **7-8 (D. Nev. Apr. 1, 2005) (citing cases); *Crown Vantage*, 2003 WL

25257821 at *6.

California case law on this issue does not support the Trustee's contention that the

intervening prepetition appointment of innocent management insulates the debtors from the

application of the *in pari delicto* defense. The United States District Court for the Northern

District of California considered a similar argument: that the knowledge imputed to the entity while the sole shareholder and wrongdoer was in control does not continue to be imputed to the entity after the wrongdoer was removed.  In *Crown Vantage,* the Northern District of California concluded that "[w]here courts have considered this question, they have found that a corporation retains its imputed knowledge even after a change in ownership."  *Crown Vantage*, 2004 WL 1535543 at \*5 (citing cases). Although the court in *Crown Vantage* was applying Virginia law, it found "no basis on which to conclude the highest court of Virginia, as well as the highest courts of the states of California and New York, would hold that a corporation's imputed knowledge is erased when the corporation is sold to new owners who, in their individual capacities, lack such knowledge." *Id.* at \*7.  The facts of *Crown Vantage* involve a replacement of ownership as opposed to a replacement of management, but the same conclusion flows: the debtors are not absolved of their roles in the alleged Ponzi scheme by the prepetition changes in management.

### 3.    Third *Peregrine* Factor: Relation of the Misconduct to the Causes of Action Asserted

Under the third *Peregrine* factor, "[t]he question is whether the unclean conduct relates directly to the transaction concerning which the complaint is made, i.e., to the *subject matter involved*, and not whether it is part of the basis upon which liability is being asserted." *Peregrine*, 133 Cal. App. 4th at 681 [emphasis in original].  The court in *Peregrine* concluded that the company's, and its officer's, "orchestration of the Ponzi scheme that defrauded investors is intimately related to the professional malpractice claims before the court," which were "based entirely on the assertion that [the law firm's] professional advice and tactics enabled [the debtor and its officer] to perpetuate their fraud on investors."  *Id.*  That is precisely the circumstance before the court in this proceeding.

It is under this factor that the *Peregrine* court also examined the relative fault of the parties to the misconduct.  *See id.* ("Peregrine's participation in the fraud affects the equities between itself and Sheppard.").  The California Supreme Court has recognized yet another exception to the application of the *in pari delicto* doctrine based on the balancing of the equities

of a particular case.  As described in *Tri-Q, Inc. v. Sta-Hi Corp.*, 63 Cal.2d 199, 219-20 (Cal. 1965) (quoting *Lewis & Queen v. N. M. Ball Sons*, 48 Cal.2d 141, 151 (Cal. 1957)):

> In some cases…effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved.

In *Sta-Hi*, the California Supreme Court reversed the trial court's application of *in pari delicto*, concluding that one party to the agreement in question was "clearly guilty of the greater moral fault," while the other party's "conduct involved little, if any, serious moral turpitude." *Id.* at 220.  It found that "refusal of the courts to enforce the agreement would permit defendant (Sta-Hi) to be unjustly enriched at the expense of plaintiff." *Id.* [internal quotations omitted].  The *Sta-Hi* court further quoted *Norwood v. Judd*, 93 Cal.App.2d 276, 289 (Cal. Ct. App. 1949) in support of its decision:

> [T]he courts should not be so enamored with the latin phrase 'in pari delicto' that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.

*See also Nateroj v. Haruyama*, 996 F.2d 1226, 1993 WL 219862, at *3 (9th Cir. June 21, 1993) (applying the *Sta-Hi* exception to the *in pari delicto* doctrine); *KSL Media*, 2016 WL 3549166 at *2 ("[T]he doctrine of *in pari delicto* involves a fact-intensive assessment of balancing the parties' culpability."); *Petters*, 603 B.R. at 435 ("In order to determine if the defense is applicable, courts must make factual determinations regarding the mutual fault of the parties.").

In her opposition, the Trustee asks the court to exercise its discretion to deny the Motion even if the *in pari delicto* doctrine does apply.  The court does not agree that it has the discretion

20

to simply ignore application of the *in pari delicto* defense. Rather, the court construes her argument within the construct of the third *Peregrine* factor to require the court to determine the parties' relative culpability. This examination is a fact-intensive inquiry inappropriate at the pleading stage unless the relevant facts appear on the face of the complaint. The Trustee has alleged various levels of knowledge and participation by Nixon, including actual knowledge of Carpoff's wrongdoing. Adv. ECF No. 1 at pp. 30-35, ¶¶ 183-211. This is sufficient to defeat the Motion to Dismiss at this stage.

### B. Count VIII: Mootness

Nixon finally requests dismissal of count VIII of the Complaint on the basis that the Trustee's objection to Nixon's proof of claim is moot since Nixon has withdrawn that claim. The Trustee has not objected to this request for relief, and the court finds the argument well-founded.

### Conclusion

For the reasons illustrated above, Nixon's arguments regarding the *in pari delicto* defense are premature and the court must deny the Motion to Dismiss as to counts I-IV. In light of Nixon's withdrawal of its proof of claim, the court will grant the Motion to Dismiss as to count VIII of the Complaint because the relief requested by the Trustee is moot. The court will enter an order consistent with this decision.

\* \* \* \* \*

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

Copy sent via BNC to:

BAILEY W. HEAPS on behalf of Defendant NIXON PEABODY LLP
633 BATTERY STREET
SAN FRANCISCO, CA 94111

ELLIOT R. PETERS on behalf of Defendant NIXON PEABODY LLP
KEKER, VAN NEST & PETERS LLP
633 BATTERY STREET
SAN FRANCISCO, CA 94111

BENJAMIN D. ROTHSTEIN on behalf of Defendant NIXON PEABODY LLP
633 BATTERY STREET
SAN FRANCISCO, CA 94111

DEEVA SHAH on behalf of Defendant NIXON PEABODY LLP
633 BATTERY STREET
SAN FRANCISCO, CA 94111

CHRISTINE ZALESKI on behalf of Defendant NIXON PEABODY LLP
633 BATTERY STREET
SAN FRANCISCO, CA 94111

# # #