Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Meaghan E. Murphy, Esq. #102770 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Alexander E. Brody, Esq. #1025332 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
mmurphy@melandbudwick.com
gbenezra@melandbudwick.com
abrody@melandbudwick.com

*Attorneys for Christina W. Lovato, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively consolidated with: |

| 19-50130-gs | DC Solar Solutions, Inc. |
|---|---|
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

| | |
|---|---|
| CHRISTINA W. LOVATO,<br><br>Plaintiff,<br><br>v.<br><br>NIXON PEABODY LLP,<br><br>Defendant. | Adversary No.: 21-05072-gs<br><br>**TRUSTEE'S MOTION TO COMPEL AN ADEQUATE RESPONSE TO TRUSTEE'S FOURTH SET OF INTERROGATORIES, NO. 1.**<br><br>**Hearing Date:  November 9, 2023**<br>**Hearing Time:  1:30 pm.** |

Christina Lovato, as plaintiff and chapter 7 trustee ("***Trustee***"), files this motion ("***Motion***") under Rules 26 and 37, L.R. 7037, and this Court's inherent authority, to compel an

adequate response to the Trustee's Fourth Set of Interrogatories, No. 1 ("***Interrogatory***").[1] In support, the Trustee states as follows.

## I.    MEET AND CONFER

After an email exchange, on September 26, 2023 the parties met and conferred by telephone regarding Nixon's inadequate response to the Trustee's Interrogatory. Nixon claimed to need more time and stated it would respond by email by October 2, 2023. After Nixon sent that email, the Trustee responded, and the parties had another telephone meet and confer on October 3, 2023, with email follow up. **Exhibit 1** (email chain). The parties did not reach an agreement. The Trustee is willing to confer further but is entitled to substantive responses.

## II.    INTRODUCTION

The Trustee sued Nixon for intentional torts. Nixon had "actual knowledge" of Carpoff's wrongdoing. Nixon (i) knowingly assisted Carpoff's breach of his fiduciary duties to DC Solar, (ii) violated its own fiduciary duties to DC Solar, (iii) lied to investors, (iv) violated ethical rules, and (v) violated state and federal statutes.

Through discovery, the Trustee has learned that Nixon concealed information, misled, and/or lied to DC Solar's independent auditor. Knowing that DC Solar's audited financial statements would be provided to investors, Nixon concealed DC Solar's massive liabilities including those related to the multiple ongoing IRS audits that Nixon was defending. Those IRS audits challenged the tax credits that were the subject of every Nixon opinion letter and explained that money was flowing in a circle with inadequate third party revenue. Truthful responses by Nixon would have led to exposure of the Carpoff Ponzi Scheme. By concealing information from DC Solar's auditor, Nixon helped mislead investors about the true state of DC Solar's financial condition and violated its ███████████████████████. This is powerful evidence of Nixon's wrongdoing.

The Trustee served an interrogatory to dig deeper. Nixon responded with evasion, gamesmanship, and delay. Nixon claims it does not know if it complied with DC Solar's

---

[1] The Trustee committed a scrivener's error, and although this was the Trustee's third set of interrogatories, she erroneously named it as her fourth.

instruction to disclose liabilities to DC Solar's auditor. Nixon refuses to reveal why it concealed information from DC Solar's auditor, claiming those reasons are protected by the attorney client privilege (whereby Nixon is the lawyer and its own client). But Nixon performed this work for its client-DC Solar. For that reason and others, it is neither confidential nor privileged.

Indeed, through its Interrogatory Response Nixon has now produced its ████████ ████████████████, which directs that the process of responding to an audit letter ████████ ████████████████████. For this reason and others, Nixon holds no internal (Nixon-to-Nixon) attorney-client privilege over its internal communications related to the response.

Nixon has failed to comply with F.R.C.P. 33 and must provide a complete and fulsome response to the Trustee's Interrogatory.

**III.    EXHIBITS**

**Exhibit 1** is an email chain related to the meet and conferral process. It includes Nixon's improper unverified supplement to its Interrogatory Response (defined below), and then its statement the next day seemingly retracting a portion of that unverified supplement.

**Exhibit 2** is the Trustee's Interrogatory, which attaches each of the Auditor Letters. The "***Auditor Letters***" are three letters from DC Solar to Nixon dated August 19, 2015, July 11, 2016, and August 28, 2017 in which DC Solar directs Nixon to disclose to DC Solar's independent auditor ("***Auditor***") liabilities or claims – whether asserted or unasserted – against DC Solar. This information would relate to Nixon's role in 30+ complex tax equity transactions as well as its defense of multiple IRS audits.

The Auditor Letters are part of a system of controls designed to ensure the accuracy of DC Solar's financial statements and books and records.[2]

**Exhibit 3** is Nixon's response to the Trustee's Interrogatory ("***Interrogatory Response***").

**Exhibit 4** is a ████████████ email chain where Nixon partners ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

[2] *See generally S.E.C. v. Grendys*, 840 F. Supp. 2d 36, 49 (D.D.C. 2012).

While it appears Nixon never responded to the 2016 Auditor Letter, Nixon refuses to say so or explain why.

**Exhibit 5** is Nixon's ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Importantly, Nixon claims in its Interrogatory Response that it "followed" its ████████ ███████████████████████ But this is **impossible** given Nixon's (incomplete) admission that (1) it "believes" it did not send a response to the 2015 Auditor Letter; and (2) it cannot find a response to the 2016 Auditor Letter. Nixon's (in)actions are directly contrary to the letter and spirit of Nixon's ████████████, and Nixon's Interrogatory Response cannot be true.

Nixon offers no explanation for its failure to respond in violation of (1) direction from its client DC Solar; and (2) its ████████████████████. Nixon must do so in response to the Interrogatory.

**Composite Exhibit 6** are examples of Nixon's bills to DC Solar, proving that Nixon charged DC Solar for considering the 2015 Audit Letter (even though Nixon failed to respond) and the 2017 Auditor Letter (Nixon did respond). Nixon's ████████████████████ ████████████████████. This proves that Nixon's internal communications and documents addressing Auditor Letters was **performed on behalf of the client**-DC Solar. Nixon's work and analysis was not performed under a purported separate and private attorney client relationship between Nixon (as the lawyer) and Nixon (as the client). DC Solar was not an outsider to this analysis: Nixon charged DC Solar for the work and DC Solar paid for it.

## IV.    AUDITOR LETTERS, AND NIXON'S RESPONSES / NON-RESPONSES, ARE IMPORTANT EVIDENCE

The Auditor Letters and counsel's response are part of a system of controls to ensure the accuracy of DC Solar's books and records.[3] Nixon's ████████████████████ stress their importance:

---

[3] *See generally S.E.C. v. Grendys*, 840 F. Supp. 2d 36, 49 (D.D.C. 2012).

███████████████████████████████████
███████████████████████████████████
██████████████████████

**Exhibit 5** (emphasis added). This is especially true here. Nixon was the designer, solicitor, and quarterback of every aspect of the tax equity transactions, and the gatekeeper to hundreds of millions of dollars of investments, which placed massive liabilities on DC Solar's shoulders. Nixon knew that the financial statements were being audited as a requirement of DC Solar's investors. Nixon knew its responses would bear on the accuracy of those financial statements.

Nixon was also counsel to DC Solar on at least three IRS audits challenging the tax credits. This has huge importance. **First**, those IRS audits challenged the tax credits that were the subject of every Nixon opinion letter. The IRS explained that money was flowing in a circle with inadequate third party revenue, contrary to Carpoff's and Nixon's communications to investors. And, if Nixon's IRS audit defense failed, then DC Solar faced massive liabilities. Truthful responses by Nixon would have eliminated any future transactions and led to the public exposure of the Carpoff Ponzi Scheme.

**Second**, Nixon knew that the IRS's challenge of the tax credits by one investment fund could lead to a domino-effect of IRS challenges, the rejection of tax credits for other transactions, past and present, and massive exposure to DC Solar. Nixon concealed this from investors in its communications with them and its written opinion letters. Nixon took the next step of helping keep this information out of DC Solar's audited financial statements, knowing they were prepared for the investors' review.

**Third**, the facts sought by the Trustee regarding the Auditor Letters are probative of Nixon's actual knowledge, intentional breach of fiduciary duty, and assistance of Carpoff's breach of his fiduciary duty. For example, per **Exhibit 4**, ███████████████████████████ ███████████████████████████████████ ████████████████████ The Trustee is entitled to discover: (1) the evolution of this situation; (2) how Nixon's failure to respond to the 2015 Auditor Letter made the ████████████████████ and (3) how much ████████████████████ Nixon failed to

respond to the 2016 Auditor Letter. ███████████████████████████████

███████████████████ and stood by: the Trustee is entitled to know why.

*See generally, e.g., Seaman v. Sedgwick LLP*, 2013 WL 12204741, *6 (C.D. Cal. July 8, 2013) ("This substantial assistance can be in the form of inaction where a defendant owes a fiduciary duty directly to a plaintiff."); *Minch v. California Highway Patrol*, 140 Cal. App. 4th 895, 898 & 907 (Cal. 2006) (internal policy manual is admissible evidence on the question of breach of duty); *California Fed. Bank v. B&H Custom Window & Door, Inc*., 2005 WL 2789280, *11 (Cal. Ct. App. Oct. 27, 2005) ("Evidence that the person 'must have known' the fact, in the face of a false exculpatory statement, can prove the fact of actual knowledge circumstantially."); *Tavernier v. Maes*, 242 Cal. App. 2d 532, 540 (Ct. App. 1966) ("[A]ctual knowledge may be established by circumstantial evidence from which the knowledge of the fact in question can be reasonably inferred.") (citing cases).

*See also, generally*, Restatement (Third) of the Law Governing Lawyers § 95 (2000) (comment f) (a lawyer's failure to properly respond to an auditor's letter is a breach of the lawyer's duty of care to the client).

## V.    THE INTERROGATORY AND INTERROGATORY RESPONSE

No where in Nixon's document production is there a response to DC Solar's 2015 and 2016 Auditor Letters. The Trustee's Interrogatory seeks to find out why. The Trustee sought a detailed explanation of Nixon's receipt, review, consideration, and response of the three Auditor Letters and the surrounding facts and circumstances.

Nixon's Interrogatory Response is severely deficient. Nixon is **evasive.** For example, Nixon implies but refuses to admit outright that it failed to respond to the 2015 and 2016 Auditor Letters, presumably because that would be a concession it ██████████████████ and concealed relevant financial information from DC Solar's Auditor (and the investors). Moreover, Nixon **refuses to fully answer the query.**  For example, Nixon refuses to explain **why** it failed to respond to the 2015 and 2016 Auditor Letters. And Nixon refuses to state whether and how Nixon's failure to respond complies / violates Nixon's Internal Policies.

The Trustee's Interrogatory asks:

1.   Identify and describe all material facts related to your receipt of, consideration of, and any response to, each of the Auditor Letters, including but not limited to:

    a.   Whether and, if so, when you received the Auditor Letters.

    b.   Your policies and procedures related to letters from auditors of clients, such as the Auditor Letters.

    c.   Whether and, if so, when and how, you complied (or did not comply) with all your policies and procedures related to the Auditor Letters.

    d.   All actions you took upon receipt of the Auditor Letters, including but not limited to all items and issues you considered in determining whether to respond and how to respond and what to include or not include in your response.

    e.   Whether you responded and, if so, how, and if not, why not.

The Auditor Letters (2015, 2016, and 2017) are exhibits to the Trustee's Interrogatory. **Exhibit 2**.

Nixon's wordy Interrogatory Response is evasive and incomplete. Nixon answers:

Nixon Peabody objects to this Interrogatory as overly broad, vague, ambiguous, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks "all material facts," "all your policies and procedures," "all actions," and "all items and issues." Nixon Peabody also objects to this Interrogatory to the extent **it seeks privileged communications between Nixon Peabody and its counsel, including its Audit Letters personnel** who report to the General Counsel. Nixon Peabody objects because this incorrectly numbered Interrogatory contains five discrete subparts, in reference to three different requests for a response to an Auditor Letter, and is therefore compound. (Indeed, based on the way the Trustee counts interrogatories, this Interrogatory counts as fifteen separate requests.) Nixon Peabody further objects to this Interrogatory to the extent that the information sought is equally within DC Solar's and the Trustee's possession, and objects to the extent the Interrogatory purports to impose on Nixon Peabody burdens that are greater than what is required by the applicable discovery rules.

Without waiving any of the objections stated above, but specifically subject to them, Nixon Peabody responds to this Interrogatory as follows:

Nixon Peabody received the Auditor Letter dated August 19, 2015 no later than September 2, 2015. Nixon Peabody drafted a response to the August 19, 2015 Auditor Letter that was dated September 2, 2015. The September 2, 2015 draft was addressed to Montage Services Inc., at 281 Ellis Street, San Francisco, CA 94102, and was to be sent by fax and first class mail. The September 2, 2015 draft copied "Jeff Carpoff, President & CEO."

**Discussions regarding the August 19, 2015 Auditor Letter occurred between September 2, 2015 and January 11, 2016**. The August 19, 2015 Auditor Letter

was discussed between and among at least the following individuals at Nixon Peabody: Christina Scardino, James Duffy, Richard Cogen, Forrest Milder, Stephanie Rallo, and Brian Fitzpatrick. **In the course of those discussions, Nixon Peabody discussed whether there were any potential liabilities that they were aware of that they would need to disclose in their response**. The Nixon Peabody attorneys working on the DC Solar engagement **reviewed transaction documents and consulted members of Nixon Peabody's Audit Letters department**, a division of the General Counsel's office, in connection with those discussions. **These communications with the Audit Letters department contain requests for or provision of legal advice and are privileged.**

Nixon Peabody authored a **draft response** to the August 19, 2015 Auditor Letter and circulated it among at least the following individuals, who were either senders, recipients, or individuals copied on emails attaching drafts: Christina Scardino, James Duffy, Richard Cogen, Forrest Milder, Deborah Bouchey, Ginny Johnson, and Stephanie Rallo. In the draft response, Nixon Peabody stated that Nixon Peabody was "not, as of the Fiscal Year End or the Effective Date, engaged to give substantive attention to, or represent the Client in connection with, loss contingencies coming within the scope of clause (a) of Paragraph 5 of the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975)." The Fiscal Year End listed was December 31, 2014, which is the date specified in the client's August 19, 2015 letter. The Effective Date listed was November 2, 2015. Nixon Peabody attached the American Bar Association Statement **to its response**. Nixon Peabody also stated that DC Solar was "indebted [to Nixon Peabody] for services and expenses in the amount of $33,909.00, and had accumulated approximately $2,936.50 in unbilled fees for services and expenses."

Nixon Peabody received the Auditor Letter dated July 11, 2016 on July 18, 2016. Nixon Peabody **drafted a response** to the July 11, 2016 Auditor Letter that was dated July 20, 2016. The July 20, 2016 draft was addressed to Montage Services Inc., at 281 Ellis Street, San Francisco, CA 94102, and was to be sent by fax and first class mail. The July 20, 2016 **draft** copied "Jeff Carpoff, President & CEO."

**Discussions regarding the July 11, 2016 Auditor Letter occurred between July 20, 2016 and October 24, 2016**. The July 11, 2016 Auditor Letter was discussed between and among at least the following individuals at Nixon Peabody: Lisa Bryning, James Duffy, Richard Cogen, and Forrest Milder. Nixon Peabody discussed **whether there were any potential liabilities that they were aware of that they would need to disclose in their response. The Nixon Peabody attorneys working on the DC Solar engagement reviewed transaction documents and consulted with DC Solar's outside counsel, Ari Lauer, regarding these issues**. They also consulted members of Nixon Peabody's Audit Letters department, a division of the General Counsel's office, in connection with those discussions. **These communications with the Audit Letters department contain requests for or provision of legal advice and are privileged.**

Nixon Peabody authored a **draft response** to the July 11, 2016 Auditor Letter and circulated it among at least the following individuals, who were either senders, recipients, or individuals copied on emails attaching drafts: Lisa Bryning, James Duffy, Richard Cogen, Forrest Milder, Deborah Bouchey, Ginny Johnson, Laura Quant, and Stephanie Rallo. In the **draft response**, Nixon Peabody stated that Nixon Peabody was "not, as of the Fiscal Year End or the Effective Date, engaged to give substantive attention to, or represent the Client in connection with, loss contingencies coming within the scope of clause (a) of Paragraph 5 of the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975)." The Fiscal Year End listed was December 31, 2015, which is the date specified in the client's July 11, 2016 letter. The Effective Date listed was July 20, 2016. Nixon Peabody attached the American Bar Association Statement **to its response**. Nixon Peabody also **stated** that DC Solar was "indebted [to Nixon Peabody] for services and expenses in the amount of $175,451.50, and had accumulated approximately $14,097.00 in unbilled fees for services and expenses."

Nixon Peabody received the Auditor Letter dated August 28, 2017 no later than September 22, 2017. **Nixon Peabody responded to the August 28, 2017 Auditor Letter in a letter dated September 22, 2017**. The September 22, 2017 letter was addressed to Montage Services Inc., at 281 Ellis Street, San Francisco, CA 94102, and sent by fax and first class mail. The September 22, 2017 letter copied "Jeff Carpoff, President & CEO." The September 22, 2017 letter was signed and placed in the mail on September 25, 2017 by Deborah Bouchey on behalf of Richard Cogen.

**Discussions regarding August 28, 2017 Auditor Letter occurred between as early as September 8, 2017 and September 25, 2017**. The August 28, 2017 Auditor Letter was discussed between and among at least the following individuals at Nixon Peabody: Lisa Bryning, Deborah Bouchey, Richard Cogen, James Duffy, Forrest Milder, and Joseph Brady. **Nixon Peabody discussed whether there were any potential liabilities that they were aware of that they would need to disclose in their response. The Nixon Peabody attorneys working on the DC Solar engagement reviewed transaction documents and consulted with DC Solar's outside counsel, Ari Lauer, regarding these issues.** They **also** consulted members of Nixon Peabody's Audit Letters department, a division of the General Counsel's office, in connection with those discussions. These communications with the Audit Letters department contain requests for or provision of legal advice and are privileged.

Nixon Peabody authored **the response** to the August 28, 2017 Auditor Letter and circulated it among at least the following individuals, who were either senders, recipients, or individuals copied on emails attaching drafts: Lisa Bryning, James Duffy, Richard Cogen, Forrest Milder, Deborah Bouchey, and Ginny Johnson. **In the response**, Nixon Peabody stated that Nixon Peabody was "not, as of the Fiscal

Year End or the Effective Date, engaged to give substantive attention to, or represent the Client in connection with, loss contingencies coming within the scope of clause (a) of Paragraph 5 of the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975)." The Fiscal Year End listed was December 31, 2016, which is the date specified in the client's August 28, 2017 letter. The Effective Date listed was September 22, 2017. Nixon Peabody attached the American Bar Association Statement to its response. Nixon Peabody also stated that DC Solar was "indebted [to Nixon Peabody] for services and expenses in the amount of $78,463.50, and had accumulated approximately $41,932.50 in unbilled fees for services and expenses."

Nixon Peabody will produce its written policy regarding letters from auditors of clients, which has been in effect since September 1, 2007. The policy provides guidance on whether and how to disclose matters in response to auditors' requests. **Nixon Peabody followed the policy's guidance when considering whether and how to disclose matters in response to the Auditor Letters**.

(emphasis added).

The bolded portions of the Interrogatory Response show:

(1)     Nixon at times describes a "draft response" and at other times Nixon describes a "response" to the 2015 and 2016 Auditor Letters. **Evasively**, Nixon never clearly states that in fact it did not respond to the 2015 and 2016 Auditor Letters.

Nixon must answer directly. Did Nixon respond? If not, why not? What did Nixon consider ("potential liabilities" are identified) and what were the surrounding circumstances?

(2)     In connection with the 2016 and 2017 Auditor Letters, Nixon states that it "reviewed transaction documents and consulted with DC Solar's outside counsel, Ari Lauer, regarding [potential liabilities that they were aware of that they would need to disclose in their response]." But Nixon fails to identify (a) those transaction documents and why Nixon reviewed them; (b) the "potential liabilities;" (c) what Nixon discussed with Mr. Lauer, why it did so, and why Nixon kept other DC Solar employees out of those discussions; and (d) how and why the 2016 discussions led to or justified Nixon's failure to respond.

Mr. Lauer is a criminal defendant in *U.S.A. v. Lauer*, Case No. 23-00261 (E.D. Ca.), a civil defendant in *Sec. & Exch. Comm. v. Lauer*, Case No. 22-1726 (E.D. Ca.), and has invoked the 5th Amendment in other DC Solar-related litigation. Because Mr. Lauer is not expected to testify in this Adversary, Nixon's sworn testimony (and the documents, some of which are subject to this Court's privilege review and matters under advisement) are the primary (if not only) source of this information.

(3)    Nixon states that it "*followed*" its ██████████████████████ (**Exhibit 5**) when "*considering whether and how to disclose matters in response*." But Nixon refuses to explain how this can be since Nixon **never responded** to the 2015 and 2016 Auditor Letters. Nixon's ████████████████████████████ in **Exhibit 4**. They knew there was a big problem.

All of this and more was requested in the Trustee's Interrogatory.

After the parties' September 26th telephonic meet and confer, and as Nixon agreed on that call, Nixon provided the October 2nd email (**Exhibit 1**) which states:

> I'm writing to follow up on your questions during our meet-and-confer last Tuesday, 9/26 regarding Nixon's verified responses to the Trustee's Fourth Set of Interrogatories.  Based on our investigation to date, we do not believe Nixon sent a response to the 2015 Auditor Letter.  We are continuing a reasonable and diligent search for the final response to the 2016 Auditor Letter.  The reasons that a final response was sent or not sent are protected by attorney-client privilege.

This is inadequate. Neither this unverified supplement nor the parties' subsequent meet-and-conferral properly answers the Trustee's Interrogatory. **First**, Nixon's counsel's unverified email statement that "we do not believe Nixon sent a response to the 2015 Auditor Letter" is very different than admissible evidence at trial that in fact "Nixon did not respond ...," which Nixon continues to refuse to admit. And "we" seems to refer to the Keker firm, not Nixon. Nixon needs to answer (clearly), not its counsel.

**Second**, Nixon refuses to acknowledge that it did not respond to the 2016 Auditor Letter either. "[W]e are still looking" (whoever "*we*" is) is not an acceptable answer to an interrogatory. And it is a continuation of Nixon's practice of refusing to verify interrogatory responses unless pressed by the Trustee. Only recently has Nixon agreed to verify **any** of its responses to **any** of the Trustee's interrogatories.

**Third**, Nixon repeats its improper refusal to provide a complete response to the Interrogatory, stating that "[t]he reasons that a final response was sent or not sent are protected by attorney-client privilege." Nixon continues to employ sharp tactics in its communications, stating that "we will provide non-privileged information," without stating whether such information even exists.

**Fourth**, Nixon does not explain how its so-called belie[f]" that it did not respond to the

2015 Auditor Letter, which it internally described as a ██████████████████

or any of its other responses / non-responses, complied with / violated Nixon Internal Policies.

## VI.    LEGAL STANDARD

F.R.C.P. 33(b)(3) obligates Nixon to answer the Trustee's Interrogatory "fully." *See also Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (parties must respond "to the fullest extent possible"). Nixon has "an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses" before providing its interrogatory responses.[4]

Additionally, Nixon's responses may not be "misleading or evasive."[5] "[I]nterrogatories should be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry."[6] "A discovering party may seek relief from the Court with respect to interrogatory responses that are 'evasive or incomplete.'"[7]

Where, as here, interrogatory answers are "inadequate, the interrogating party may move under Rule 37(a) for an order compelling adequate answers."[8]

## VII.    ARGUMENT

### 1.    Nixon's Responses (or Non-Responses) to DC Solar's Three Auditor Letters Is Very Important Evidence

The Trustee's claims are largely for intentional tort. Nixon had "actual knowledge" of Carpoff's wrongdoing, violated its fiduciary duties to client-DC Solar, and knowingly assisted Carpoff in breaching his fiduciary duties, thereby harming DC Solar.

The Trustee's evidence is compelling, including Nixon lying to investors about DC Solar's liabilities. Now, the Trustee has identified that Nixon misled DC Solar's Auditor by concealing known liabilities in violation of (1) DC Solar's direction to disclose; and (2) Nixon's ████████ ███████████████████. Nixon (**Exhibit 4**) ████████████████████████████ ████████████. Nixon apparently sent no response to the 2015 and 2016 Auditor Letters, and discussed but never fixed these failures. Rather, Nixon hoped no one would notice.

---

[4] *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009); *see also Shaw v. Davis*, 2021 WL 3889980, *6 (D. Nev. Aug. 31, 2021).
[5] *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988).
[6] *Murrey v. City of Los Angeles*, 2020 WL 2065019, *5 (C.D. Cal. Feb. 21, 2020).
[7] *V5 Techs. v. Switch, Ltd*., 334 F.R.D. 297, 305 (D. Nev. 2019).
[8] F.R.C.P. 33, cmt. 1970 Amendment Subdivision (a), incorporated by F.R.B.P. 7037.

The buck stops with Mr. Milder. Mr. Milder chose to conceal DC Solar's liabilities from DC Solar's Auditor, just like he concealed this and other information from investors in his opinion letters. Mr. Milder did so to induce investments and close transactions, all of which harmed DC Solar. The discovery by ███████████████████████, their refusal to take action, the ramifications of Nixon's conflict of interest, and Nixon's abandonment of its duties to its client (DC Solar) in favor of Carpoff (its client's insider), are all powerful evidence to be considered by the trier of fact.

### 2.    Nixon's Interrogatory Response is Deficient.

Nixon's Interrogatory Response is evasive and incomplete. Nixon uses a lot of words and doubletalk to distract from its refusal to directly answer the Trustee's query. Some examples follow.

Nixon does not state whether it in fact did or did not respond to the 2015 and 2016 Auditor Letters. An implication that Nixon did not respond is insufficient. In an unverified email supplement, Nixon claims an inadequate "belie[f]" that it did not respond, and that it purportedly is still looking around. Query where is Nixon looking. This is inadequate. Nixon is / was a defendant in the LA Case since 2019 and a defendant in this Adversary since 2021. Rather than answering the Trustee's question as required, Nixon continues its tactics of evasion, gamesmanship, and delay. Nixon's goal is to deprive the Trustee of important discoverable information and avoid conceding that it violated its policies.

Nixon must also describe the surrounding circumstances, including **why** it failed to respond to the 2015 and 2016 Auditor Letters in violation of its ███████████████ in its efforts to serve Mr. Carpoff (but not DC Solar), what it reviewed, what it considered (*e.g.,* "potental liabilities"), and what it communicated with Mr. Lauer (as examples). Nixon does not appear to contend that this information is privileged, nor can it. Nixon must provide a fulsome answer.

Nixon does not explain how it was able to swear under oath that it followed its ██████ ███████████████████████████████████████████████████ (**Exhibit 3**) when **it failed to respond to the 2015 and 2016 Auditor Letters**, a direct violation of the letter and spirit of the ███████████████, particularly given its view that the situation ███████████ ███████████████████████████████. **Exhibit 4**.

The Trustee cannot provide the Court with all the items Nixon failed to include in its Interrogatory Response, given that this information is in Nixon's possession and the burden to

"fully" and non-evasively respond is on Nixon as the responding party. But clearly, Nixon has failed to adequately respond in order to deprive the Trustee of admissible evidence of Nixon's wrongdoing.

### 3. **Nixon's Gamesmanship and Delay Should be Rejected**

Nixon has boasted that it is the "*most aggressive litigant*" believing that unprofessional and sharp tactics work. A continuation of this practice is to avoid admitting the truth where it would compromise its positions. For example: (1) Nixon previously described the contents of a document ██████████████████████████████████████████████████████████████████████████████ (2) Nixon previously claimed ████████████████████████████ ████████████████████████████████████████████████████████████████████████████; and (3) Nixon refuses to admit that Nixon's own allegations made under Rule 11 in another litigation matter are, in fact, true. [ECF Nos. 304, 342, 296, & 340]. Nixon pretends not to understand basic vocabulary such as the meaning of the word "important," claiming that word is "ambiguous," and "could have multiple meanings." [*E.g.,* ECF No. 296]. And yet, Nixon's ████████ ████████████████████████████████████████████████████████████████████████

Here, the Trustee submits that Nixon **knows** it did not respond to the 2015 and 2016 Auditor Letters, and refuses to say so. And Nixon **knows** this violated its Internal ████████ ████████████████ but refuses to say so. Nixon's refusal to answer such basic questions appear to be a harbinger of what the Trustee may expect when she deposes Messrs. Milder, Brady, Cogen, and Duffy. No doubt the Trustee will face evasive non-answers followed by a litany of coaching / speaking objections such as "don't speculate," "asked and answered," and "move on counsel."

Nixon must be held to the Rules. Its litigation conduct should not be permitted.

### 4. **Nixon's Claim of Privilege Should be Rejected.**

Nixon claims in its Interrogatory Response that its "communications with the Audit Letters department contain requests for or provision of legal advice and are privileged." Nixon also claims that "[t]he reasons that a final response was sent or not sent are protected by attorney-client privilege." Nixon's claim of privilege to conceal important evidence of its wrongdoing should be rejected.

**First**, even if Nixon could assert the attorney-client privilege between itself (as client) and itself (as lawyer) in these circumstances, and it cannot, Nixon appears to acknowledge in its crafty

drafting that not all its communications with its "Audit Letters department" are privileged. Rather, Nixon writes in its Interrogatory Response that its communications "… contain requests for …" legal advice. Query which ones do and which ones do not. The ones that do not are unquestionably not privileged.

Nixon should be directed to answer the Interrogatory by providing all information that is not a request for legal advice (and otherwise does not satisfy the basic elements of the attorney-client privilege).

**Second**, the Trustee (under seal) filed her (i) motion to compel and for an order denying claw-back ("***First Motion to Compel***") [ECF No. 282]; and (ii) motion to compel Nixon Peabody LLP to (1) Produce Non-Privileged Responsive Documents; and (2) Submit Documents for in Camera Review ("***Second Motion to Compel***" [ECF No. 304], and together with the First Motion to Compel, the "***Motions to Compel***"). The Motions to Compel, along with the briefing and oral argument, address multiple reasons why Nixon's claim of attorney-client privilege over these items is without merit. Given that the Motions to Compel have been briefed and argued, and this Court has taken them under advisement, the Trustee does not repeat those arguments in full here.

Rather, the Trustee briefly re-states one portion of her argument, that

(i)    The Federal rules of privilege apply;[9]

(ii)    Nixon has the burden to demonstrate that the privilege applies in these circumstances, which is to be narrowly and strictly constructed;[10] and

(iii)    Nixon cannot assert the privilege against its then-"current client," DC Solar; this is also known as the "fiduciary exception" to the attorney-client privilege.[11]

As to this final point, **Nixon was DC Solar's lawyer** and would be breaching its fiduciary duties to DC Solar (such as of loyalty and disclosure) if it could claim as attorney-client privileged the reasons it concealed DC Solar's liabilities from DC Solar's Auditor. Nixon may not act adversely to its current client (DC Solar) because it decided to speak with its law firm colleagues.

---

[9] The Trustee has asserted claims against Nixon under state and federal law, and the items at issue are relevant to both; thus, the federal rules of evidence apply. *Agster v. Maricopa County*, 22 F.3d 836, 839 (9th Cir. 2005); *In re Ginzburg*, 517 B.R. 175, 182 (Bankr. C.D. Cal. 2014).

[10] *In re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012); *Regents of Univ. of California v. Affymetrix, Inc*., 326 F.R.D. 275, 278 (S.D. Cal. 2018).

[11] "Where conflicting duties exist, the law firm's right to claim privilege must give way to the interest in protecting current clients who may be harmed by the conflict." *In re Sonic Blue, Inc.*, 2008 WL 170562, *9 (Bankr. N.D. Cal Jan. 18, 2007)

Moreover, to establish that these communications are in fact privileged from DC Solar, Nixon must be required to provide an affidavit of a Nixon representative attesting that "Individual X" served as the "client representative" and that "Individual X" sought advice from "Individual Y" in an attorney-client capacity. Nixon makes no such effort, presumably because any such witness would be subject to questioning and cross examination.

**Third**, Nixon performed this work at DC Solar's request and direction (per DC Solar's three Auditor Letters) and for DC Solar's benefit (the audit of three years of its financial statements). Thus, it cannot have been done for the purposes of Nixon's own legal advice to itself (Nixon as the client and the lawyer), which is the basic, fundamental, and essential requirement of the attorney client privilege. Nixon cannot keep documents, communications, and information conducted **for** DC Solar's (its client's) benefit privileged **from** DC Solar.

**Fourth**, the Trustee presents an additional argument, which it did not present in its Motions to Compel as Nixon had not yet produced the necessary material.

Per Nixon's Interrogatory Response, Nixon has only now produced its ███████████ ███████████████ (**Exhibit 5**). Therein, Nixon's ████████████████████████:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████

The Trustee presents certain examples of Nixon's bills to DC Solar (**Composite Exhibit 6**), to show that Nixon charged DC Solar ██████████████████████████████████ ████████████████
████████████████████████████████████████
██████████████████████████████████████ – demonstrate that Nixon's conduct related to the Auditor Letters **was part of its representation of DC Solar** and therefore

could never be attorney client privileged within the firm (Nixon as the client and Nixon as the lawyer) and confidential from client-DC Solar.

Nixon's claim of attorney client privilege (with itself) should be rejected.

### 5.    Nixon's Other Objections are Boilerplate and Should be Rejected.

Nixon's boilerplate objections should be rejected.[12] For example, Nixon objects to the Trustee's Interrogatory "as overly broad, vague, ambiguous, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of relevant evidence." Aside for being boilerplate with no support or specificity, it is untrue.

Nixon concealed information from, misled, and/or lied to DC Solar's Auditor. Nixon appears to have violated its ███████████████████████ in responding to DC Solar's direction to provide its Auditor essential information. And Nixon internally described its own failure to respond to the 2015 Auditor Letter as follows:



**Exhibit 4** (emphasis added).

Nixon must be compelled to provide a fulsome and complete response to the Trustee's Interrogatory. Nixon's objections should all be rejected.

## VIII.    CONCLUSION

Respectfully, this Court should order Nixon to provide a fulsome and complete response to the Trustee's Interrogatory, and all other relief this Court deems just and proper. Nixon's Interrogatory Response is deficient, evasive, and incomplete.

Dated: October 11, 2023.              **HARTMAN & HARTMAN**

---

[12] *Alfaro v. City of San Diego*, 2018 WL 4562240, *1 (S.D. Cal. Sept. 21, 2018) (citing cases).

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.
*Attorney for Plaintiff Christina W. Lovato*

**MELAND BUDWICK, P.A.**

*/s/ Michael S. Budwick*
Michael S. Budwick, Esq.
Solomon B. Genet, Esq.
Meaghan E. Murphy, Esq.
Gil Ben-Ezra, Esq.
Alexander E. Brody, Esq.
*Attorneys for Plaintiff Christina W. Lovato*

## CERTIFICATE OF SERVICE

I certify that on September 27, 2023, I caused to be served the following document(s):

### TRUSTEE'S MOTION TO COMPEL BETTER RESPONSS TO TRUSTEE'S FOURTH SET OF INTERROGATORIES

I caused to be served the above-named document(s) as indicated below:

✓ a.    Via ECF to:

ALEXANDER E. BRODY    abrody@melandbudwick.com
ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com
mrbnefs@yahoo.com
LOUIS M BUBALA    lbubala@kcnvlaw.com  cdroessler@kcnvlaw.com
bsheehan@kcnvlaw.com
MICHAEL S. BUDWICK    mbudwick@melandbudwick.com
ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com
SOLOMON B. GENET    sgenet@melandbudwick.com
ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com
JEFFREY L HARTMAN    notices@bankruptcyreno.com
abg@bankruptcyreno.com
BAILEY W. HEAPS    bheaps@keker.com
ADAM HOSMER-HENNER    ahosmerhenner@mcdonaldcarano.com
CHRISTINA W. LOVATO    trusteelovato@att.net  NV26@ecfcbis.com
ERIC H. MACMICHAEL    emacmichael@kvn.com
BENJAMIN D. ROTHSTEIN    brothstein@keker.com
DEEVA SHAH    dshah@keker.com
PAUL H. VON AUTENRIED    pvonautenried@keker.com
CHRISTINE M. ZALESKI    czaleski@keker.com jgray@keker.com
efiling@keker.com

✓ b.    Direct Email to:

Elliot R. Peters, Esq. at epeters@keker.com
Distribution List at npsolar@keker.com

I declare under penalty of perjury that the foregoing is true and correct.

DATED: October 11, 2023.

*/s/ Solomon B. Genet*
Solomon B. Genet, Esq.

# EXHIBIT 1

| | |
|---|---|
| **From:** | Sol Genet |
| **To:** | "Ben D. Rothstein"; Paul von Autenried |
| **Cc:** | Michael Budwick; Gil Ben-Ezra; Meaghan Murphy; Alex Brody; NPSOLAR |
| **Subject:** | RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs |
| **Date:** | Tuesday, October 3, 2023 5:40:05 PM |
| **Attachments:** | image001.png |

Ben:

It was good speaking with you as well.

As I communicated on our call, the Trustee's position is that Nixon's response is inadequate. The threshold request in the rog is whether Nixon provided a response to the audit letters, and still Nixon has provided no definite answer. I do not agree with you that this is a difficult ask. Also, last week I did not ask you to go "a step further," but simply sought to obtain a complete response to the interrogatory.

As to the question of "why" Nixon did not send responses, the Trustee's position is that the a-c privilege cannot protect this information from DC Solar, Nixon's then-client. I recognize that we disagree, including from the parties' previous positions in the motions to compel.

Of course, the Trustee will review any Nixon supplement upon receipt.

Thanks,
Sol


SOLOMON GENET



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

sgenet@melandbudwick.com
www.melandbudwick.com
Download Vcard

**From:** Ben D. Rothstein <BRothstein@keker.com>
**Sent:** Tuesday, October 3, 2023 5:09 PM
**To:** Sol Genet <sgenet@melandbudwick.com>; Paul von Autenried <PvonAutenried@keker.com>
**Cc:** Michael Budwick <mbudwick@melandbudwick.com>; Gil Ben-Ezra
<gbenezra@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Alex
Brody <abrody@melandbudwick.com>; NPSOLAR <NPSOLAR@keker.com>

**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

EXTERNAL EMAIL:

Sol,

We appreciate your time just on the phone now.

As I mentioned on the call, we are not aware of Nixon sending a formal response to the auditor letters from 2015 and 2016, based on our search efforts to date. On the meet and confer last week, you asked us, essentially, to go a step further than that and affirm that no responses ever went out to those two letters. There are inherent difficulties in affirming a negative proposition like that, given that the events at issue took place 7-8 years ago. But we are exhausting all potential avenues, and we will supplement our responses to answer the question of whether we sent responses to the 2015 and 2016 letters with as much certainty as possible.

On the question of why we did not send responses, we will provide non-privileged information that addresses this question in our supplemental response.

Thanks,
Ben

**Benjamin D. Rothstein**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 773 6666 direct | 415 391 5400 main
brothstein@keker.com | vcard | keker.com
Pronouns: he/him/his

**From:** Sol Genet <sgenet@melandbudwick.com>
**Sent:** Tuesday, October 3, 2023 4:32 AM
**To:** Paul von Autenried <PvonAutenried@keker.com>
**Cc:** Michael Budwick <mbudwick@melandbudwick.com>; Gil Ben-Ezra
<gbenezra@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Alex
Brody <abrody@melandbudwick.com>; NPSOLAR <NPSOLAR@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

[EXTERNAL]

Hi Paul.

I will circulate dial in information for 430 pm ET / 130 pm PT today (Tuesday).

Thanks,
Sol

SOLOMON GENET



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

sgenet@melandbudwick.com
www.melandbudwick.com
Download  Vcard

---

**From:** Paul von Autenried <PvonAutenried@keker.com>
**Sent:** Monday, October 2, 2023 7:05 PM
**To:** Sol Genet <sgenet@melandbudwick.com>
**Cc:** Michael Budwick <mbudwick@melandbudwick.com>; Gil Ben-Ezra
<gbenezra@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Alex
Brody <abrody@melandbudwick.com>; NPSOLAR <NPSOLAR@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

EXTERNAL EMAIL:
Hi Sol,

We're available to confer tomorrow after 1pm PT / 4pm ET.  Please let me know what time after
1pm PT works for you.

Thanks,
Paul

---

**Paul von Autenried**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2296 direct | 415 391 5400 main
pvonautenried@keker.com | keker.com
*pronouns:  he/him/his*

**From:** Sol Genet <sgenet@melandbudwick.com>
**Sent:** Monday, October 2, 2023 2:59 PM
**To:** Paul von Autenried <PvonAutenried@keker.com>
**Cc:** Michael Budwick <mbudwick@melandbudwick.com>; Gil Ben-Ezra <gbenezra@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>; NPSOLAR <NPSOLAR@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

**[EXTERNAL]**

Hi Paul –
I just tried you and didn't get an answer.  Can we speak tomorrow at 12 pm ET?

Thanks,
Sol

### SOLOMON GENET



### MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

sgenet@melandbudwick.com
www.melandbudwick.com
Download Vcard

**From:** Sol Genet
**Sent:** Monday, October 2, 2023 5:56 PM
**To:** 'Paul von Autenried' <PvonAutenried@keker.com>
**Cc:** Michael Budwick <mbudwick@melandbudwick.com>; Gil Ben-Ezra <gbenezra@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>; NPSOLAR <NPSOLAR@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

Paul –
I hope all is well.

This response is inadequate. I am going to call you now.

Thanks,

-Sol

SOLOMON GENET



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

sgenet@melandbudwick.com
www.melandbudwick.com
Download  Vcard

---

**From:** Paul von Autenried <PvonAutenried@keker.com>
**Sent:** Monday, October 2, 2023 5:46 PM
**To:** Sol Genet <sgenet@melandbudwick.com>
**Cc:** Michael Budwick <mbudwick@melandbudwick.com>; Gil Ben-Ezra
<gbenezra@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Alex
Brody <abrody@melandbudwick.com>; NPSOLAR <NPSOLAR@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

EXTERNAL EMAIL:
Hi Sol,

I'm writing to follow up on your questions during our meet-and-confer last Tuesday, 9/26 regarding
Nixon's verified responses to the Trustee's Fourth Set of Interrogatories. Based on our investigation
to date, we do not believe Nixon sent a response to the 2015 Auditor Letter. We are continuing a
reasonable and diligent search for the final response to the 2016 Auditor Letter. The reasons that a
final response was sent or not sent are protected by attorney-client privilege.

Thanks,
Paul

---

**Paul von Autenried**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2296 direct | 415 391 5400 main
pvonautenried@keker.com | keker.com
*pronouns:  he/him/his*

**From:** Paul von Autenried <PvonAutenried@keker.com>
**Sent:** Friday, September 22, 2023 10:07 AM
**To:** Sol Genet <sgenet@melandbudwick.com>; Christine Zaleski <CZaleski@keker.com>; Laresa
Brown <LBrown@keker.com>; Michael Budwick <mbudwick@melandbudwick.com>; Meaghan
Murphy <mmurphy@melandbudwick.com>; Gil Ben-Ezra <gbenezra@melandbudwick.com>; Alex
Brody <abrody@melandbudwick.com>
**Cc:** NPSOLAR <NPSOLAR@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

Hi Sol,

Hope you are well.  We are available at 2:30pm PST/5:30pm EST on Tuesday, 9/26.  Please circulate
a dial-in.

Thanks,
Paul

---

**Paul von Autenried**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2296 direct | 415 391 5400 main
pvonautenried@keker.com | keker.com
*pronouns:  he/him/his*

**From:** Sol Genet <sgenet@melandbudwick.com>
**Sent:** Friday, September 22, 2023 5:45 AM
**To:** Christine Zaleski <CZaleski@keker.com>; Laresa Brown <LBrown@keker.com>; Michael Budwick
<mbudwick@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Gil Ben-
Ezra <gbenezra@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>
**Cc:** NPSOLAR <NPSOLAR@keker.com>; Paul von Autenried <PvonAutenried@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

**[EXTERNAL]**

Hi Christine:
Hope all is well.

Can we have a call to confer on these responses on Tuesday at 530 pm ET or Wed at 3 pm ET?

Thanks,
Sol

SOLOMON GENET



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

sgenet@melandbudwick.com
www.melandbudwick.com
Download  Vcard

**From:** Christine Zaleski <CZaleski@keker.com>
**Sent:** Thursday, September 21, 2023 2:54 PM
**To:** Sol Genet <sgenet@melandbudwick.com>; Laresa Brown <LBrown@keker.com>; Michael
Budwick <mbudwick@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>;
Gil Ben-Ezra <gbenezra@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>
**Cc:** NPSOLAR <NPSOLAR@keker.com>; Paul von Autenried <PvonAutenried@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

EXTERNAL EMAIL:
Hi Sol,
We have agreed to verify the response and working on getting it to you as soon as possible.

Regards,
Christine

**Christine Zaleski**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 773 6693 direct | 415 391 5400 main
czaleski@keker.com | vcard | keker.com

**From:** Sol Genet <sgenet@melandbudwick.com>
**Sent:** Thursday, September 21, 2023 6:21 AM
**To:** Christine Zaleski <CZaleski@keker.com>; Laresa Brown <LBrown@keker.com>; Michael Budwick
<mbudwick@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Gil Ben-
Ezra <gbenezra@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>
**Cc:** NPSOLAR <NPSOLAR@keker.com>; Paul von Autenried <PvonAutenried@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

**[EXTERNAL]**

Hi Christine:

Hope all is well.  Following up on the below.  LMK, thanks,

Sol

SOLOMON GENET



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

sgenet@melandbudwick.com
www.melandbudwick.com
Download  Vcard

**From:** Christine Zaleski <CZaleski@keker.com>
**Sent:** Monday, September 18, 2023 3:26 PM
**To:** Sol Genet <sgenet@melandbudwick.com>; Laresa Brown <LBrown@keker.com>; Michael Budwick <mbudwick@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Gil Ben-Ezra <gbenezra@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>
**Cc:** NPSOLAR <NPSOLAR@keker.com>; Paul von Autenried <PvonAutenried@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

EXTERNAL EMAIL:
Hi Sol,
Thanks for reaching out. We're working on getting this to you.

Regards,
Christine

**Christine Zaleski**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 773 6693 direct | 415 391 5400 main
czaleski@keker.com | vcard | keker.com

**From:** Sol Genet <sgenet@melandbudwick.com>

**Sent:** Monday, September 18, 2023 10:32 AM
**To:** Laresa Brown <LBrown@keker.com>; Michael Budwick <mbudwick@melandbudwick.com>;
Meaghan Murphy <mmurphy@melandbudwick.com>; Gil Ben-Ezra
<gbenezra@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>
**Cc:** NPSOLAR <NPSOLAR@keker.com>; Paul von Autenried <PvonAutenried@keker.com>
**Subject:** RE: Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

[EXTERNAL]

Counsel:
Hope all is well.

The attached responses do not comply with R. 33 as they are not signed under oath.  Please
promptly provide an amended response which complies with the Rule.

Thanks, and we will be in touch re M&C soon.

Sol

### SOLOMON GENET



### MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

sgenet@melandbudwick.com
www.melandbudwick.com
Download  Vcard

---

**From:** Laresa Brown <LBrown@keker.com>
**Sent:** Friday, September 15, 2023 8:43 PM
**To:** notices@bankruptcyreno.com; Michael Budwick <mbudwick@melandbudwick.com>; Sol Genet
<sgenet@melandbudwick.com>; Meaghan Murphy <mmurphy@melandbudwick.com>; Gil Ben-Ezra
<gbenezra@melandbudwick.com>; Alex Brody <abrody@melandbudwick.com>
**Cc:** NPSOLAR <NPSOLAR@keker.com>; Paul von Autenried <PvonAutenried@keker.com>
**Subject:** Christina W. Lovato v. Nixon Peabody LLP, Adv. Case No. 21-05072-gs

EXTERNAL EMAIL:

Dear Counsel:

Attached please find the following, served herein on today's date:

- DEFENDANT NIXON PEABODY LLP'S RESPONSE TO PLAINTIFF'S FOURTH SET OF INTERROGATORIES

Please contact our office with any questions you may have.

With kind regards,

Laresa Brown

---

**Laresa Brown**
Legal Secretary
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2281 direct | 415 391 5400 main
lbrown@keker.com | keker.com

# EXHIBIT 2

1  Jeffrey L. Hartman, Esq.
2  Nevada Bar No. 1607
   **HARTMAN & HARTMAN**
3  510 W. Plumb Lane, Suite B
   Reno, NV 89509
4  T: (775) 324-2800
5  F: (775) 324-1818
   notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Meaghan E. Murphy, Esq. #102770 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Alexander E. Brody, Esq. #1025332 - Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
6  T: (305) 358-6363
7  F: (305) 358-1221
8  mbudwick@melandbudwick.com
   sgenet@melandbudwick.com
9  mmurphy@melandbudwick.com
   gbenezra@melandbudwick.com
10  abrody@melandbudwick.com

11  Attorneys for Christina Lovato, Chapter 7 Trustee

12          **UNITED STATES BANKRUPTCY COURT**
13                  **DISTRICT OF NEVADA**

14  In re

15  DOUBLE JUMP, INC.

16          Debtor.

Lead Case No.: BK-19-50102-gs
(Chapter 7)

Substantively consolidated with:

| 19-50130-gs | DC Solar Solutions, Inc. |
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

19

20  CHRISTINA W. LOVATO,

21          Plaintiff,

22  v.

23  NIXON PEABODY LLP,

24          Defendant.

Adversary No.:  21-05072-gs

**PLAINTIFF'S FOURTH SET OF
INTERROGATORIES TO
DEFENDANT NIXON PEABODY, LLP**

25

26          Christina W. Lovato, as the chapter 7 trustee ("***Plaintiff***" or "***Trustee***") for the

27  bankruptcy estates of DC Solar Solutions, Inc., DC Solar Distribution, Inc., DC Solar Freedom,

28  Inc., and Double Jump, Inc., pursuant to *Fed. R. Civ. P.* 33, made applicable to this proceeding

by *Fed. R. Bankr. P.* 7033, requests Defendant Nixon Peabody, LLP, in accordance with the Instructions included herein, to answer under oath the interrogatories to follow, and serve a copy of such answers on the undersigned attorney within thirty (30) days from the date of service hereof or such shorter time as ordered by the Court.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on August 16, 2023, I caused the document listed below to be served:

**PLAINTIFF'S FOURTH SET OF INTERROGATORIES TO
DEFENDANT NIXON PEABODY, LLP**

I caused to be served the above-named document(s) as indicated below:

Via Electronic Mail to:

| | |
|---|---|
| Elliot R. Peters | epeters@keker.com |
| Eric H. MacMichael | emacmichael@keker.com |
| Julia L. Allen | jallen@keker.com |
| Ben D. Rothstein | brothstein@keker.com |
| Bailey W. Heaps | bheaps@keker.com |
| Christine Zaleski | czaleski@keker.com |
| Louis M. Bubala III | lbubala@kcnvlaw.com |
| Distribution list | npsolar@keker.com |

DATED: August 16, 2023.

*/s/Solomon B. Genet*
Solomon B. Genet, Esq.

## DEFINITIONS

A.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

B.    The use of the singular form of any word includes the plural and vice versa.

C.    "Auditor Letters" shall mean the three letters attached as Exhibit 1, Exhibit 2, and Exhibit 3.

D.    "Communication(s)" mean any oral or written statement, dialogue, colloquy, discussion, conversation, or conveyance or receipt of information, and also means any transfer of thoughts or ideas between persons by means of Documents, including any transfer of data from one location to another by electronic or similar means, such as through e-mails, voicemails, or text messages, instant messages, social media post or messaging, or any other kind of electronic transfer of information.

E.    "Debtor(s)" or "DC Solar" shall mean DC Solar Solutions, Inc., DC Solar Distribution, Inc., DC Solar Freedom, Inc., and Double Jump, Inc.

F.    The term "describe," as used in these interrogatories, means to describe with particularity all known facts, including without limitation describing dates, participants, and all substantive information that bears upon or relates to the matter that is the subject of the inquiry.

G.    The term "document," as used in these interrogatories, means any original and every nonidentical copy, reproduction, or draft of any document, writing, or record, within the broadest meaning under the Federal Rules of Civil Procedure, in YOUR possession, custody, or control, including but not limited to correspondence, memoranda, communications, minutes or records of meetings or conferences, lists of persons attending meetings or conferences, summaries, records of conversations, text messages, instant messaging logs, social media postings, social media messages, scripts, statements, announcements, tape recordings, audio recordings, electronic voice message recordings, motion pictures, video recordings, transcripts, drafts, notes, notebooks, logs, drawings, graphs, charts, photographs, data compilations, intake forms, time cards, computer records or printouts, fax communications, email or other

3

communications, metadata, computer files, reports, and opinions, whether printed, recorded, handwritten, stored electronically or on computer disc or in some other tangible medium of expression from which the information can be retrieved, perceived, or understood.

H.      The term "identify," as used in these interrogatories, means to establish the identity of some person and/or the nature and definitive characteristics of something, with as much specificity as possible.

i) For a person or entity, it further means to provide the full name, all known addresses, all known telephone numbers, and all known email addresses of the person or entity, or as much of that information as is available to you after a reasonable and diligent search.

ii) For a transaction, event, or occurrence, it further means to provide the date, time, location, and a full description, and to identify the participants.

iii) For a document, it further means to provide a Bates number or to otherwise provide sufficient identifying information to locate that document.

iv) For grounds for contentions, it further means to state with specificity any and all support for the contention, including all factual allegations supporting the contention and all evidence therefor.

I.      "Related to," in any tense or for any derivation thereof, means tending to be associated with either in logic or reason, should be interpreted as broadly as possible, and includes but is not limited to (in any tense or derivation) pertaining, referencing, regarding, concerning, describing, mentioning, constituting, concerning, supporting, corroborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, controverts or contradicts.

J.      "You" and "your" refers to Nixon Peabody, LLP including its employees, agents, contractors, subsidiaries, parent company, affiliated companies, and other persons acting or purporting to act on Your behalf, including Your Representative.

4

## **INSTRUCTIONS**

A.      If You object to answering any Interrogatory or fail to fully respond to any Interrogatory on the grounds of attorney-client privilege, work/product, or otherwise, you are to:

   1.      state the nature of the privilege; and

   2.      identify the specific grounds on which your objection is based.

B.      When an Interrogatory request the identification of any person, for each such person, state the person's:

   1.      full name; and

   2.      current residential address and telephone number.

C.      When an Interrogatory request the identification of any document, state separately for each such document:

   1.      the title or description of the document;

   2.      its date; and

   3.      The person presently having custody, control or possession of the original and all copies.

D.      Whenever the space provided is insufficient to fully answer any Interrogatory, please attached additional pages and indicate the precise Interrogatory and subpart to which the answer responds.

E.      Unless stated otherwise, each of the interrogatory requests below are limited to the time period between January 1, 2010 and December 31, 2018.

## <u>INTERROGATORIES</u>

1.      Identify and describe all material facts related to your receipt of, consideration of, and any response to, each of the Auditor Letters, including but not limited to:

    a.      Whether and, if so, when you received the Auditor Letters.

    b.      Your policies and procedures related to letters from auditors of clients, such as the Auditor Letters.

    c.      Whether and, if so, when and how, you complied (or did not comply) with all your policies and procedures related to the Auditor Letters.

    d.      All actions you took upon receipt of the Auditor Letters, including but not limited to all items and issues you considered in determining whether to respond and how to respond and what to include or not include in your response.

    e.      Whether you responded and, if so, how, and if not, why not.

2.      Identify all documents that relate, support, or are materially connected to your response to interrogatory #1 above.

**Nixon Peabody, LLP**

_____
By:
Its:

STATE OF                       )

                             )     SS:

COUNTY OF                )

       BEFORE ME, the undersigned authority, personally appeared _____, as _____ of Nixon Peabody LLP, who after being duly sworn, deposes and says that the foregoing Answers to Interrogatories are true and correct to the best of his knowledge, information and belief.

       IN WITNESS WHEREOF, I have hereunto set my hand and official seal, in the County and State aforementioned, this ___ day of _____, 2023.

_____
Notary Public, State of

My commission expires:
Personally known_____ or
Produced Identification _____
Type of ID Produced _____

                             My Commission Expires:

7



A Clean Energy Company

August 19, 2015

Nixon Peabody LLP
One Embarcadero Center
San Francisco, CA 94111-360

Our auditors, Montage Services Inc., are conducting an audit of our financial statements at December 31, 2014 and for the year then ended. This letter will serve as our consent for you to furnish to our auditors all the information requested herein. Accordingly, please furnish to them the information requested below involving matters with respect to which you have been engaged and to which you have devoted substantive attention on behalf of the Company in the form of legal consultation or representation.

Pending or Threatened Litigation, Claims, and Assessments (excluding unasserted claims and assessments)

Please prepare a description of all material litigation, claims, and assessments (excluding unasserted claims and assessments). Materiality for purposes of this letter includes items involving amounts exceeding $450,000 individually or in the aggregate. The description of each matter should include:

1. the nature of the litigation,

2. the progress of the matter to date,

3. how management is responding or intends to respond to the litigation, e.g., to contest the matter vigorously or to seek an out of court settlement, and

4. an evaluation of the likelihood of an unfavorable outcome and an estimate, if one can be made, of the amount or range of potential loss.

Also, please identify any pending or threatened litigation, claims, and assessments with respect to which you have been engaged but as to which you have not yet devoted substantive attention.

Unasserted Claims and Assessments

We have represented to our auditors that there are no unasserted possible claims or assessments that you have advised us are probable of assertion and must be disclosed in accordance with *FASB Accounting Standards Codification 450, Contingencies.*

We understand that whenever, in the course of performing legal services for us with respect to a matter recognized to involve an unasserted possible claim or assessment that may call for financial statement disclosure, if you have formed a professional conclusion that we should disclose or consider disclosure concerning such possible claim or assessment, as a matter of professional responsibility to us, you will so advise us and will consult with us concerning the question of such disclosure and the applicable requirements *of FASB Accounting Standards Codification 450, Contingencies* (excerpts of which can be found in the ABA's *Auditor's Letter Handbook*). Please specifically confirm to our auditors that our understanding is correct.

EXHIBIT 1
NP_LOVATO_00144636

Response

Your response should include matters that existed as of December 31, 2014, and during the period from that date to the effective date of your response.    Please specify the effective date of your response if it is other than the date of reply.

Please specifically identify the nature of, and reasons for, any limitations on your response.

Our auditors expect to have the audit completed by about August 26, 2015.    They would appreciate receiving your reply by that date with a specified effective date no earlier than August 19, 2015.    You may also be requested to provide verbal updates to your written response at a later date.    We appreciate your timely response to such requests.

Other Matters

Please also indicate the amount we were indebted to you for services and expenses (billed or unbilled) on December 31, 2014.

Very truly yours,

Jeff Carpoff

President & CEO

DC Solar Solutions, Inc.

135 Mason Circle

Concord, CA 94520

 **DC SOLAR**

A Clean Energy Company

July 11, 2016

**RECEIVED**

Nixon Peabody LLP
1 Embarcadero Center Ste 1800
San Francisco, California 94111

JUL 1 8 2016

**AUDIT LETTERS**

Our auditors, Montage Services Inc., are conducting an audit of our financial statements at December 31, 2015 and for the year then ended. This letter will serve as our consent for you to furnish to our auditors all the information requested herein. Accordingly, please furnish to them the information requested below involving matters with respect to which you have been engaged and to which you have devoted substantive attention on behalf of the Company in the form of legal consultation or representation.

Pending or Threatened Litigation, Claims, and Assessments (excluding unasserted claims and assessments)

Please prepare a description of all material litigation, claims, and assessments (excluding unasserted claims and assessments). Materiality for purposes of this letter includes items involving amounts exceeding $1,000,000 individually or in the aggregate. The description of each matter should include:

1. the nature of the litigation,

2. the progress of the matter to date,

3. how management is responding or intends to respond to the litigation, e.g., to contest the matter vigorously or to seek an out of court settlement, and

4. an evaluation of the likelihood of an unfavorable outcome and an estimate, if one can be made, of the amount or range of potential loss.

Also, please identify any pending or threatened litigation, claims, and assessments with respect to which you have been engaged but as to which you have not yet devoted substantive attention.

Unasserted Claims and Assessments

We have represented to our auditors that there are no unasserted possible claims or assessments that you have advised us are probable of assertion and must be disclosed in accordance with *FASB Accounting Standards Codification 450, Contingencies.*

We understand that whenever, in the course of performing legal services for us with respect to a matter recognized to involve an unasserted possible claim or assessment that may call for financial statement disclosure, if you have formed a professional conclusion that we should disclose or consider disclosure concerning such possible claim or assessment, as a matter of professional responsibility to us, you will so advise us and will consult with us concerning the question of such disclosure and the applicable requirements *of FASB Accounting Standards Codification 450, Contingencies* (excerpts of which can be found in the ABA's *Auditor's Letter Handbook*). Please specifically confirm to our auditors that our understanding is correct.

**DC Solar Solutions** · 135 Mason Circle Concord, CA 94520 · 925-203-1088 · dcsolardistribution.com
facebook.com/dcsolarsolutions · twitter.com/DCSolar



**EXHIBIT 2**

NP_LOVATO_00177168

## Response

Your response should include matters that existed as of December 31, 2015, and during the period from that date to the effective date of your response. Please specify the effective date of your response if it is other than the date of reply.

Please specifically identify the nature of, and reasons for, any limitations on your response.

Our auditors expect to have the audit completed by about June 30, 2016. They would appreciate receiving your reply by that date with a specified effective date no earlier than June 28, 2016. You may also be requested to provide verbal updates to your written response at a later date. We appreciate your timely response to such requests.

## Other Matters

Please also indicate the amount we were indebted to you for services and expenses (billed or unbilled) on December 31, 2015.

Very truly yours,

Jeff Carpoff
President & CEO
DC Solar Solutions, Inc.
135 Mason Circle
Concord, CA 94520

NP_LOVATO_00177169

 **DC SOLAR**                                          A Clean Energy Company

August 28, 2017

Nixon Peabody LLP
1 Embarcadero Center Ste 1800
San Francisco, California 94111

Our auditors, Montage Services Inc., are conducting an audit of our financial statements at December 31, 2016 and for the year then ended. This letter will serve as our consent for you to furnish to our auditors all the information requested herein. Accordingly, please furnish to them the information requested below involving matters with respect to which you have been engaged and to which you have devoted substantive attention on behalf of the Company in the form of legal consultation or representation.

Pending or Threatened Litigation, Claims, and Assessments (excluding unasserted claims and assessments)

Please prepare a description of all material litigation, claims, and assessments (excluding unasserted claims and assessments). Materiality for purposes of this letter includes items involving amounts exceeding $1,000,000 individually or in the aggregate. The description of each matter should include:

1. the nature of the litigation,

2. the progress of the matter to date,

3. how management is responding or intends to respond to the litigation, e.g., to contest the matter vigorously or to seek an out of court settlement, and

4. an evaluation of the likelihood of an unfavorable outcome and an estimate, if one can be made, of the amount or range of potential loss.

Also, please identify any pending or threatened litigation, claims, and assessments with respect to which you have been engaged but as to which you have not yet devoted substantive attention.

Unasserted Claims and Assessments

We have represented to our auditors that there are no unasserted possible claims or assessments that you have advised us are probable of assertion and must be disclosed in accordance with *FASB Accounting Standards Codification 450, Contingencies.*

We understand that whenever, in the course of performing legal services for us with respect to a matter recognized to involve an unasserted possible claim or assessment that may call for financial statement disclosure, if you have formed a professional conclusion that we should disclose or consider disclosure concerning such possible claim or assessment, as a matter of professional responsibility to us, you will so advise us and will consult with us concerning the question of such disclosure and the applicable requirements of *FASB Accounting Standards Codification 450, Contingencies* (excerpts of which can be found in the ABA's *Auditor's Letter Handbook*). Please specifically confirm to our auditors that our understanding is correct.

**DC Solar Solutions** · 135 Mason Circle Concord, CA 94520 · 925-203-1086 · dcsolardistribution.com
facebook.com/dcsolarsolutions · twitter.com/DCSolar



**EXHIBIT 3**
NP_LOVATO_00222620

Response

Your response should include matters that existed as of December 31, 2016, and during the period from that date to the effective date of your response.   Please specify the effective date of your response if it is other than the date of reply.

Please specifically identify the nature of, and reasons for, any limitations on your response.

Our auditors expect to have the audit completed by about September 15, 2017.   They would appreciate receiving your reply by that date with a specified effective date no earlier than September 10, 2017.   You may also be requested to provide verbal updates to your written response at a later date.   We appreciate your timely response to such requests.

Other Matters

Please also indicate the amount we were indebted to you for services and expenses (billed or unbilled) on December 31, 2016.

Very truly yours,

Jeff Carpoff
President & CEO
DC Solar Solutions, Inc.
4901 Park Road
Benicia, CA 94510

# EXHIBIT 3

1

2

3

4

5

| KEKER, VAN NEST & PETERS LLP<br>ELLIOT R. PETERS – *Admitted PHV*<br>epeters@keker.com<br>ERIC H. MACMICHAEL – *Admitted PHV*<br>emacmichael@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:    415 391 5400<br>Facsimile:    415 397 7188 | KAEMPFER CROWELL<br>LOUIS M. BUBALA III - # 8974<br>lbubala@kcnvlaw.com<br>50 W. Liberty St., Ste. 700<br>Reno, NV 89501<br>Telephone: 775 852 3900<br>Facsimile: 775 327 2011 |
|---|---|

6

7

Attorneys For Defendant Nixon Peabody LLP

8

UNITED STATES BANKRUPTCY COURT

9

DISTRICT OF NEVADA

10

11

12

13

14

15

16

In re

DOUBLE JUMP, INC.

        Debtor,

<u>X</u>    Affects DC Solar Solutions, Inc.
<u>X</u>    Affects DC Solar Distributions, Inc.
<u>X</u>    Affects DC Solar Freedom, Inc.
<u>X</u>    Affects Double Jump, Inc.

Lead Case No. BK-19-50102-gs
(Chapter 7)

<u>Substantively Consolidated with:</u>

19-50130-gs   DC Solar Solutions, Inc.
19-50131-gs   DC Solar Distribution, Inc.
19-50135-gs   DC Solar Freedom, Inc.

17

18

19

20

21

22

23

CHRISTINA W. LOVATO,

        Plaintiff,

v.

NIXON PEABODY LLP,

        Defendant.

Adversary Proceeding No.:  21-05072-gs

**DEFENDANT NIXON PEABODY LLP'S
RESPONSE TO PLAINTIFF'S FOURTH
SET OF INTERROGATORIES**

24

25

26

27

28

PROPOUNDING PARTY:      Plaintiff CHRISTINA W. LOVATO

RESPONDING PARTY:       Defendant NIXON PEABODY LLP

SET NO.:                 FOUR

2354099

Pursuant to Federal Rule of Bankruptcy Procedure 7033 and Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Nixon Peabody LLP ("Nixon Peabody") hereby provides the following objections and responses to Plaintiff's Fourth Set of Interrogatories to Nixon Peabody. Nixon Peabody reserves the right to amend or supplement these objections and responses to the extent allowed by the Federal Rules of Civil Procedure or as otherwise permitted.

**GENERAL OBJECTIONS**

The following General Objections apply to each of the Interrogatories whether or not specifically referred to and/or incorporated in each response:

1.      Nixon Peabody's responses are based on current, accessible, available information and belief. Nixon Peabody's investigation is still ongoing, and it does not yet know the full spectrum of facts related to the claims and defenses asserted in this case. Also, facts and evidence not known may be imperfectly understood, and, in good faith, may not be included in these responses. Nixon Peabody reserves the right to modify or supplement its responses with information that may be subsequently discovered through its investigation and discovery while the case is pending. Nixon Peabody also reserves the right to conduct discovery with reference to, and to offer into evidence at trial or other proceedings in this action, all witnesses, facts, and evidence, notwithstanding the absence of references to such witnesses, facts, and evidence in these responses.

2.      Nixon Peabody is responding to the Interrogatories as Nixon Peabody reasonably interprets and understands the language of the Interrogatories. If Plaintiff subsequently asserts any interpretation of any individual Interrogatory that differs from Nixon Peabody's reasonable understanding, Nixon Peabody reserves its right to supplement the responses and/or any objections herein.

3.      Nixon Peabody's responses shall not be construed in any way as an admission that any definition provided by Plaintiff or any assertion made is either factually correct or legally binding upon Nixon Peabody, or a waiver of any of Nixon Peabody's objections, including, but not limited to, objections regarding privilege, confidentiality, and discoverability.

2354099

4.      Nixon Peabody objects to each Interrogatory to the extent that it seeks information that is neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence, and to the extent the Interrogatory calls for information unrelated to the temporal scope of this matter.

5.      Nixon Peabody objects to each Interrogatory to the extent it fails to specify a relevant time period for the information sought or seeks information pertaining to periods of time either before or after the periods of time at issue in this action, thereby causing the Interrogatory to: (a) be overbroad, (b) be burdensome and oppressive, and (c) seek information that is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

6.      Nixon Peabody objects to each Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, common interest privilege, joint defense privilege, spousal privilege, a lawyer's duty of confidentiality to current and former clients, and/or any other applicable privilege or protection, arising from either (a) Nixon Peabody's work for entities other than DC Solar or (b) Nixon Peabody's counsel's work for Nixon Peabody itself.  Moreover, even if Nixon Peabody inadvertently provides information protected from disclosure by the foregoing privileges, Nixon Peabody does not waive its right to assert those privileges and/or objections to disclosure subsequently. Nixon Peabody expressly reserves the right to supplement and revise its responses and objections should further investigation reveal that documents or information protected by any of the privileges described herein were disclosed.

7.      Nixon Peabody objects to each Interrogatory to the extent that it calls for information that qualifies for protection under standards developed under Federal Rule of Civil Procedure 26(c), including, but not limited to, proprietary information not generally known to the public that contains sensitive financial, technical, or competitive information, trade secrets, or current research and development that may harm Nixon Peabody's business position if known by other parties, and that Nixon Peabody would not disclose to competitors or third parties within the

ordinary course of business.  Nixon Peabody provides any information subject to the protective order governing such information entered by this Court.

8.     Nixon Peabody objects to each Interrogatory that seeks information in the custody or control of Plaintiff and/or third parties, and further objects to each Interrogatory that seeks publicly available information, or information that Plaintiff could obtain without Nixon Peabody's response.

9.     Nixon Peabody objects to the definitions of "You" and "Your" to the extent the definitions seek information not within Nixon Peabody's possession, custody or control; or purport to require Nixon Peabody to seek documents in the possession, custody, or control of third parties; or seek information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of relevant or admissible evidence.  Nixon Peabody further objects to the definitions to the extent the definitions render any request vague, ambiguous, overbroad, or unduly burdensome.

10.     Nixon Peabody objects to the definition of "related to" to the extent the definition renders the Interrogatories vague, ambiguous, overly broad, or unduly burdensome; or seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

11.     Nixon Peabody objects to Instructions A, B, C, and D to the extent they require information beyond the obligations set forth in the Federal Rules of Civil Procedure or beyond the text of the Interrogatory itself.  Nixon Peabody will produce privilege logs in conformity with its obligations under the Federal Rules of Civil Procedure, local rules, and any other applicable law. Nixon Peabody will identify any specific documents using the Bates-stamped production number for that document.

12.     Nixon Peabody objects to Plaintiffs' instructions and definitions to the extent they purport to impose duties and obligations in addition to or inconsistent with those imposed by the Federal Rules of Civil Procedure.

2354099

**RESPONSES TO INTERROGATORIES:**

**INTERROGATORY NO. 1:**

Identify and describe all material facts related to your receipt of, consideration of, and any response to, each of the Auditor Letters, including but not limited to:

      a.      Whether and, if so, when you received the Auditor Letters.

      b.      Your policies and procedures related to letters from auditors of clients, such as the Auditor Letters.

      c.      Whether and, if so, when and how, you complied (or did not comply) with all your policies and procedures related to the Auditor Letters.

      d.      All actions you took upon receipt of the Auditor Letters, including but not limited to all items and issues you considered in determining whether to respond and how to respond and what to include or not include in your response.

      e.      Whether you responded and, if so, how, and if not, why not.

**RESPONSE TO INTERROGATORY NO. 1:**

Nixon Peabody objects to this Interrogatory as overly broad, vague, ambiguous, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks "all material facts," "all your policies and procedures," "all actions," and "all items and issues." Nixon Peabody also objects to this Interrogatory to the extent it seeks privileged communications between Nixon Peabody and its counsel, including its Audit Letters personnel who report to the General Counsel. Nixon Peabody objects because this incorrectly numbered Interrogatory contains five discrete subparts, in reference to three different requests for a response to an Auditor Letter, and is therefore compound. (Indeed, based on the way the Trustee counts interrogatories, this Interrogatory counts as fifteen separate requests.) Nixon Peabody further objects to this Interrogatory to the extent that the information sought is equally within DC Solar's and the Trustee's possession, and objects to the extent the Interrogatory purports to impose on Nixon Peabody burdens that are greater than what is required by the applicable discovery rules.

Without waiving any of the objections stated above, but specifically subject to them,

2354099

Nixon Peabody responds to this Interrogatory as follows:

Nixon Peabody received the Auditor Letter dated August 19, 2015 no later than September 2, 2015. Nixon Peabody drafted a response to the August 19, 2015 Auditor Letter that was dated September 2, 2015. The September 2, 2015 draft was addressed to Montage Services Inc., at 281 Ellis Street, San Francisco, CA 94102, and was to be sent by fax and first class mail. The September 2, 2015 draft copied "Jeff Carpoff, President & CEO."

Discussions regarding the August 19, 2015 Auditor Letter occurred between September 2, 2015 and January 11, 2016. The August 19, 2015 Auditor Letter was discussed between and among at least the following individuals at Nixon Peabody: Christina Scardino, James Duffy, Richard Cogen, Forrest Milder, Stephanie Rallo, and Brian Fitzpatrick. In the course of those discussions, Nixon Peabody discussed whether there were any potential liabilities that they were aware of that they would need to disclose in their response. The Nixon Peabody attorneys working on the DC Solar engagement reviewed transaction documents and consulted members of Nixon Peabody's Audit Letters department, a division of the General Counsel's office, in connection with those discussions. These communications with the Audit Letters department contain requests for or provision of legal advice and are privileged.

Nixon Peabody authored a draft response to the August 19, 2015 Auditor Letter and circulated it among at least the following individuals, who were either senders, recipients, or individuals copied on emails attaching drafts: Christina Scardino, James Duffy, Richard Cogen, Forrest Milder, Deborah Bouchey, Ginny Johnson, and Stephanie Rallo. In the draft response, Nixon Peabody stated that Nixon Peabody was "not, as of the Fiscal Year End or the Effective Date, engaged to give substantive attention to, or represent the Client in connection with, loss contingencies coming within the scope of clause (a) of Paragraph 5 of the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975)." The Fiscal Year End listed was December 31, 2014, which is the date specified in the client's August 19, 2015 letter. The Effective Date listed was November 2, 2015. Nixon Peabody attached the American Bar Association Statement to its response. Nixon Peabody also stated that DC Solar was "indebted [to Nixon Peabody] for services and expenses in

2354099

the amount of $33,909.00, and had accumulated approximately $2,936.50 in unbilled fees for services and expenses."

Nixon Peabody received the Auditor Letter dated July 11, 2016 on July 18, 2016.  Nixon Peabody drafted a response to the July 11, 2016 Auditor Letter that was dated July 20, 2016.  The July 20, 2016 draft was addressed to Montage Services Inc., at 281 Ellis Street, San Francisco, CA 94102, and was to be sent by fax and first class mail.  The July 20, 2016 draft copied "Jeff Carpoff, President & CEO."

Discussions regarding the July 11, 2016 Auditor Letter occurred between July 20, 2016 and October 24, 2016.  The July 11, 2016 Auditor Letter was discussed between and among at least the following individuals at Nixon Peabody:  Lisa Bryning, James Duffy, Richard Cogen, and Forrest Milder.  Nixon Peabody discussed whether there were any potential liabilities that they were aware of that they would need to disclose in their response.  The Nixon Peabody attorneys working on the DC Solar engagement reviewed transaction documents and consulted with DC Solar's outside counsel, Ari Lauer, regarding these issues.  They also consulted members of Nixon Peabody's Audit Letters department, a division of the General Counsel's office, in connection with those discussions.  These communications with the Audit Letters department contain requests for or provision of legal advice and are privileged.

Nixon Peabody authored a draft response to the July 11, 2016 Auditor Letter and circulated it among at least the following individuals, who were either senders, recipients, or individuals copied on emails attaching drafts:  Lisa Bryning, James Duffy, Richard Cogen, Forrest Milder, Deborah Bouchey, Ginny Johnson, Laura Quant, and Stephanie Rallo.  In the draft response, Nixon Peabody stated that Nixon Peabody was "not, as of the Fiscal Year End or the Effective Date, engaged to give substantive attention to, or represent the Client in connection with, loss contingencies coming within the scope of clause (a) of Paragraph 5 of the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975)."  The Fiscal Year End listed was December 31, 2015, which is the date specified in the client's July 11, 2016 letter.  The Effective Date listed was July 20, 2016.  Nixon Peabody attached the American Bar Association Statement to its response.  Nixon Peabody

6

DEFENDANT NIXON PEABODY LLP'S RESPONSE TO
PLAINTIFF'S INTERROGATORIES, SET FOUR
LEAD CASE NO. BK-19-50102-GS; ADVERSARY PROCEEDING NO. 21-05072-GS

2354099

also stated that DC Solar was "indebted [to Nixon Peabody] for services and expenses in the amount of $175,451.50, and had accumulated approximately $14,097.00 in unbilled fees for services and expenses."

Nixon Peabody received the Auditor Letter dated August 28, 2017 no later than September 22, 2017. Nixon Peabody responded to the August 28, 2017 Auditor Letter in a letter dated September 22, 2017. The September 22, 2017 letter was addressed to Montage Services Inc., at 281 Ellis Street, San Francisco, CA 94102, and sent by fax and first class mail. The September 22, 2017 letter copied "Jeff Carpoff, President & CEO." The September 22, 2017 letter was signed and placed in the mail on September 25, 2017 by Deborah Bouchey on behalf of Richard Cogen.

Discussions regarding August 28, 2017 Auditor Letter occurred between as early as September 8, 2017 and September 25, 2017. The August 28, 2017 Auditor Letter was discussed between and among at least the following individuals at Nixon Peabody: Lisa Bryning, Deborah Bouchey, Richard Cogen, James Duffy, Forrest Milder, and Joseph Brady. Nixon Peabody discussed whether there were any potential liabilities that they were aware of that they would need to disclose in their response. The Nixon Peabody attorneys working on the DC Solar engagement reviewed transaction documents and consulted with DC Solar's outside counsel, Ari Lauer, regarding these issues. They also consulted members of Nixon Peabody's Audit Letters department, a division of the General Counsel's office, in connection with those discussions. These communications with the Audit Letters department contain requests for or provision of legal advice and are privileged.

Nixon Peabody authored the response to the August 28, 2017 Auditor Letter and circulated it among at least the following individuals, who were either senders, recipients, or individuals copied on emails attaching drafts: Lisa Bryning, James Duffy, Richard Cogen, Forrest Milder, Deborah Bouchey, and Ginny Johnson. In the response, Nixon Peabody stated that Nixon Peabody was "not, as of the Fiscal Year End or the Effective Date, engaged to give substantive attention to, or represent the Client in connection with, loss contingencies coming within the scope of clause (a) of Paragraph 5 of the American Bar Association Statement of

1    Policy Regarding Lawyers' Responses to Auditors' Requests for Information (December 1975)."

2    The Fiscal Year End listed was December 31, 2016, which is the date specified in the client's

3    August 28, 2017 letter.  The Effective Date listed was September 22, 2017.  Nixon Peabody

4    attached the American Bar Association Statement to its response.  Nixon Peabody also stated that

5    DC Solar was "indebted [to Nixon Peabody] for services and expenses in the amount of

6    $78,463.50, and had accumulated approximately $41,932.50 in unbilled fees for services and

7    expenses."

8        Nixon Peabody will produce its written policy regarding letters from auditors of clients,

9    which has been in effect since September 1, 2007.  The policy provides guidance on whether and

10    how to disclose matters in response to auditors' requests.  Nixon Peabody followed the policy's

11    guidance when considering whether and how to disclose matters in response to the Auditor

12    Letters.

13    **INTERROGATORY NO. 2:**

14        Identify all documents that relate, support, or are materially connected to your response to

15    interrogatory #1 above.

16    **RESPONSE TO INTERROGATORY NO. 2:**

17        Nixon Peabody objects to this Interrogatory as overly broad, vague, ambiguous, unduly

18    burdensome, and neither relevant nor reasonably calculated to lead to the discovery of relevant

19    evidence.  In particular, Nixon objects to the phrase "materially connected" as vague and

20    ambiguous.  Nixon Peabody also objects to this Interrogatory to the extent it seeks privileged

21    communications between Nixon Peabody and its counsel, including its Audit Letters personnel

22    who report to the General Counsel.  Nixon Peabody objects because this incorrectly numbered

23    Interrogatory, through its reference to incorrectly numbered Interrogatory No. 1, contains five

24    discrete subparts, in regard to three separate Auditor Letters, and is therefore compound.  Nixon

25    Peabody further objects to this Interrogatory to the extent that the information sought is equally

26    within DC Solar's and the Trustee's possession, and objects to the extent the Interrogatory

27    purports to impose on Nixon Peabody burdens that are greater than what is required by the

28    applicable discovery rules.

8

DEFENDANT NIXON PEABODY LLP'S RESPONSE TO
PLAINTIFF'S INTERROGATORIES, SET FOUR
LEAD CASE NO. BK-19-50102-GS; ADVERSARY PROCEEDING NO. 21-05072-GS

2354099

Without waiving any of the objections stated above, but specifically subject to them, Nixon Peabody responds to this Interrogatory as follows:

Nixon Peabody's response to Interrogatory No. 1 is based on the following documents, which were already produced to the Trustee:

NP_LOVATO_00144634;
NP_LOVATO_00144636;
NP_LOVATO_00144641;
NP_LOVATO_00144644;
NP_LOVATO_00144646;
NP_LOVATO_00144693;
NP_LOVATO_00144715;
NP_LOVATO_00144717;
NP_LOVATO_00145319;
NP_LOVATO_00145325;
NP_LOVATO_00145330;
NP_LOVATO_00145333;
NP_LOVATO_00154422;
NP_LOVATO_00154430;
NP_LOVATO_00154438;
NP_LOVATO_00155300;
NP_LOVATO_00155308;
NP_LOVATO_00177163;
NP_LOVATO_00177165;
NP_LOVATO_00177168;
NP_LOVATO_00177382;
NP_LOVATO_00177385;
NP_LOVATO_00177388;
NP_LOVATO_00177468;
NP_LOVATO_00177471;
NP_LOVATO_00177473;
NP_LOVATO_00177476;
NP_LOVATO_00177481;
NP_LOVATO_00177484;
NP_LOVATO_00177487;
NP_LOVATO_00177490;

2354099

1  NP_LOVATO_00177498;

2  NP_LOVATO_00177503;

3  NP_LOVATO_00178266;

   NP_LOVATO_00178271;

4  NP_LOVATO_00178277;

5  NP_LOVATO_00178323;

6  NP_LOVATO_00178331;

   NP_LOVATO_00178562;

7  NP_LOVATO_00222620;

8  NP_LOVATO_00222723;

9  NP_LOVATO_00222724;

   NP_LOVATO_00222726;

10 NP_LOVATO_00222729;

11 NP_LOVATO_00223564;

12 NP_LOVATO_00223566;

   NP_LOVATO_00223591;

13 NP_LOVATO_00223596;

14 NP_LOVATO_00223598;

15 NP_LOVATO_00223601;

   NP_LOVATO_00306188;

16 NP_LOVATO_00306189;

17 NP_LOVATO_00306197;

18 NP_LOVATO_00306198; and

   NP_LOVATO_00306271.

19

20 Dated:  September 15, 2023                    KEKER, VAN NEST & PETERS LLP

21

22                                        By:    s/Eric H. MacMichael
                                               ELLIOT R. PETERS
23                                             ERIC H. MACMICHAEL

24

25

26

27

28

                                        10

2354099

Lead Case No.: BK-19-50102-gs - In re Double Jump, Inc
Adversary No. 21-05072-gs - Christina W. Lovato v. Nixon Peabody LLP

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On September 15, 2023, I served the following document(s):

**DEFENDANT NIXON PEABODY LLP'S RESPONSE TO
PLAINTIFF'S INTERROGATORIES, SET FOUR**

☑ by regular **UNITED STATES MAIL** by placing Original in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker, Van Nest & Peters LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

☑ by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Executed on September 15, 2023, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Laresa Brown

11

2354099

Lead Case No.: BK-19-50102-gs - In re Double Jump, Inc
Adversary No. 21-05072-gs - Christina W. Lovato v. Nixon Peabody LLP

## SERVICE LIST

Jeffrey L. Hartman
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, Nevada  89509
Tel: (775) 324-2800
Tel: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick
Solomon B. Genet
Meaghan E. Murphy
Gil Ben-Ezra
Alexander E. Brody
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Tel: (305) 358-6363
Tel: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
mmurphy@melandbudwick.com
gbenezra@melandbudwick.com
abrody@melandbudwick.com

*Attorneys for Plaintiff*
CHRISTINA LOVATO,
CHAPTER 7 TRUSTEE

DEFENDANT NIXON PEABODY LLP'S RESPONSE TO
PLAINTIFF'S INTERROGATORIES, SET FOUR
LEAD CASE NO. BK-19-50102-GS; ADVERSARY PROCEEDING NO. 21-05072-GS

2354099

# EXHIBIT 4



CONFIDENTIAL

NP_LOVATO_00177503



CONFIDENTIAL

NP_LOVATO_00177504



CONFIDENTIAL

NP_LOVATO_00177505

CONFIDENTIAL

NP_LOVATO_00177506

# EXHIBIT 5



Confidential

Confidential

NP_LOVATO_00432159

Confidential

NP_LOVATO_00432160

Confidential

NP_LOVATO_00432161

Confidential

NP_LOVATO_00432162



Confidential

NP_LOVATO_00432163

# EXHIBIT 6



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL

NP_LOVATO_00395016